Elizabeth J. PARKER and O. D. HADFIELD Jr.
*v*. ARKANSAS REAL ESTATE COMMISSION
et al

73-236                                          506 S.W. 2d 125

Opinion delivered March 11, 1974

*Baker & Probst, P.A.* and *Moses, McClellan, Arnold, Owen & McDermott,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Bill D. Etter,* Dep. Atty. Gen., for appellees.

GEORGE ROSE SMITH, Justice. The Arkansas Real Estate Commission is a public agency of the state, created in 1929. For about nine years one of the appellants, Elizabeth J. Parker, was employed by the Commission in a clerical capacity. For about eighteen years the other appellant, O. D. Hadfield, Jr., was employed by the Commission as its executive secretary. As of January 1, 1970, Mrs. Parker and Hadfield left the Commission's employ and apparently became full-time employees of the Arkansas Real Estate Association, which is a private trade organization composed of real estate brokers and salesmen.

In July of 1970 Mrs. Parker filed this suit against the Real Estate Commission and its Retirement Committee, the latter being responsible for the administration of the Commission's pension plan for its employees. Mrs. Parker's

pleadings assert that she is entitled to a lump sum retirement payment of $2,016. Later on Hadfield was brought into the case and asserted a similar lump sum claim for $36,171.21. The Commission resisted the claims on the ground that the pension plan was illegal and void from its inception. This appeal is from a judgment finding the plan to be void and denying the claims.

As we view the case, the controlling question is whether the Commission was authorized by statute to adopt a pension plan for its employees. We find no statutory authorization for the plan and therefore affirm the circuit court's judgment.

The governing statute is Act 148 of 1929, as amended. Ark. Stat. Ann., Title 71, Ch. 13 (Repl. 1957 and Supp. 1973). The purpose of the act was to regulate the professional conduct of real estate brokers and salesmen. The measure created the Real Estate Commission (§ 71-1303) and empowered it to grant licenses to brokers and salesmen (§§ 71-1304 *et seq.*) and to revoke such licenses for cause. § 71-1307. The act made it unlawful for an unlicensed person to act as a real estate broker or salesman (§ 71-1301), with criminal penalties being provided. § 71-1311.

The statute levied original and renewal license fees in specified amounts (§ 71-1306), which were to be collected by the Commission and expended "for the requirements, purposes and expenses of said Commission under the provisions of this Act." § 71-1303. The Commission's authority to employ a staff was set forth in this key sentence:

"The Commission shall employ a secretary and such clerical assistance as may be necessary to carry out the provisions of this Act and to put into effect such rules and regulations as the Commission may promulgate, and the Commission shall fix the salaries of such employees, and may, if it deems it advisable, require such employees to make good and sufficient surety bond for the faithful performance of their duties." § 71-1303.

The act made no specific reference to retirement benefits, a pension plan, or anything of that nature.

For 41 years—from 1929 until 1970—the Commission operated as a cash-fund agency, in the sense that its funds were not deposited in the state treasury and no legislative appropriation of its funds was ever made. That practice ended with the enactment of Act 184 of the 1970 Extraordinary Session (Supp. 1973, §§ 71-1312 *et seq.*), which fixed the number and the salaries of the Commission's authorized employees.

In December, 1964, the Commission adopted the pension plan now relied upon by the appellants. We need not detail its elaborate provisions. The Commission's employees were to make no contributions to the pension fund. At the outset the Commission, apparently from its accumulated resources, made the only contribution that the plan ever received: A donation of $35,270, which was to be held and invested by the corporate trustee of the fund. The plan provided optional lump sum benefits for eligible departing employees. The appellants now assert such claims, totaling $38,187.21 with interest from January 1, 1970. The pension fund as of December 31, 1969, amounted to $38,211.58, so that payment of the two claims would have reduced the fund to $24.37.

The appellants, in insisting that the pension plan is valid, rely primarily upon three cases involving what have become known in Arkansas as cash funds. *Gipson* v. *Ingram*, 215 Ark. 812, 223 S.W. 2d 595 (1949); *Gipson* v. *Crawfis*, 225 Ark. 903, 286 S.W. 2d 336 (1956); and *Rebsamen Motor Co.* v. *Phillips*, 226 Ark. 146, 289 S.W. 2d 179, 57 A.L.R. 2d 1256 (1956). (We should point out that in the *Rebsamen* case the first full paragraph on page 155 of our Reports was deleted on rehearing; but the briefs in the case at bar have understandably overlooked that fact, because the deletion was not noted until it appeared as an erratum in 228 Ark. xxv.)

The appellants' emphasis upon the cash-fund aspect of the case is misplaced. That the Commission's revenues were not deposited in the state treasury and therefore were cash funds is immaterial to the determination of the issues. What is important, as we pointed out in *Ingram*, is that all cash funds of state agencies are public monies. The case at bar turns not upon the cash-fund character of the Commission's revenue but upon the public character of that revenue.

The Commission was not at liberty to spend public money for any purpose it might choose, regardless of statutory authority. To the contrary, its mandate was to expend its funds to carry out the purposes of Act 148, as amended. Thus the really pivotal issue is whether that statute conferred upon the Commission the authority to put into effect a retirement plan such as the one it adopted in 1964.

We find no such legislative motive in the language of the statute. We have quoted the only pertinent sentence, which states that the Commission "shall employ a secretary and such clerical assistance as may be necessary to carry out the provisions of this Act . . . and . . . shall fix the salaries of such employees." § 71-1303.

The issue narrows down to the meaning of the word "salaries." We have no basis for thinking that in 1929 the General Assembly used that term to mean not only regular pay but also retirement benefits. Such benefits were not then commonplace, as they are now. The federal Social Security law was not adopted until 1935. The Arkansas retirement system for public employees was not adopted until 1957. And, as a practical construction, the Real Estate Commission itself did not interpret the statute to include retirement benefits during the first 35 years of the Commission's existence.

In a decidedly similar case, *Daggett* v. *St. Francis Levee Dist.*, 226 Ark. 545, 291 S.W. 2d 254 (1956), we held that the improvement district directors' statutory power to fix the compensation of the district's officers and employees did not, in view of the history of the statute, authorize the creation of a retirement plan. From that opinion: "It is perfectly clear that the purpose of the 1943 and 1951 statutes was simply to transfer to levee districts a power that the legislature had previously reserved to itself, that of fixing the *salaries* [emphasis supplied] to be paid to officers and employees of the various districts. . . . If the lawmakers had meant to enter a new field by authorizing the use of tax money for the creation of a pension fund that intention would doubtless have been expressly stated in the statutes. The fact that the intention was not so stated convinces us that it did not exist." So

here, if the meaning of the Real Estate Commission's enabling act is to be changed, that change must be made by the General Assembly, not by the courts.

Alternatively, the appellants present a somewhat novel contention that they are entitled to the lump sum payments in question upon a *quantum meruit* basis. This theory appears to be founded upon the fact that the Commission and the appellants believed in good faith that the pension plan was authorized by law. The only authority cited is certain language in *Vick Consol. Sch. Dist. No. 21* v. *New,* 208 Ark. 874, 187 S.W. 2d 948 (1945), to the effect that in some cases a *quantum meruit* recovery has been allowed for services rendered by an officer to a governmental subdivision under a contract that was not forbidden by statute, although it was still something that should not have been done.

That principle is not applicable here. To begin with, we are dealing with the State itself, not a governmental subdivision, so that coercive action falls within the prohibition of suits against the State. Ark. Const., Art. 5, § 20 (1874). Furthermore, the appellants' argument amounts in substance to a contention that a public employee who believes in good faith that he is entitled to greater compensation than the law allows thereby acquires a *quantum meruit* claim to the excess. It seems to us that merely to state the contention is to answer it.

Affirmed.