The Honorable Julia Hughes Jones State Auditor 230 State Capitol Little Rock, Arkansas 72201
Dear Ms. Jones:
This is in response to your request for an opinion concerning the public relations reimbursements of certain public officials, recent changes in the federal income tax laws, and Amendment 56 to the Arkansas Constitution.
Specifically, you have noted that the Arkansas Constitution, Amendment 56, limits the salaries of constitutional officers and members of the General Assembly. You also note that "[t]he recent passage of the `Technical Miscellaneous Revenue Act of 1988' (TAMRA), P.L. 100-647, has changed prior federal tax reporting requirements and the definition of wages for FICA and unemployment tax purposes. It appears to include expense allowances for which there is not an adequate accounting made to the employer." You also note that in the case of Berry v. Gordon, 237 Ark. 547,376 S.W.2d 279 (1964), it was held that "an act appropriating expense money for certain public officers for use in public relations work did not violate [a former amendment similar to Amendment 56] as constituting an unconstitutional salary increase."
You have three questions relative to these facts which are as follows:
 1. Will we violate the Arkansas Constitution by including as wages on Forms W2 gross amounts for public relations reimbursements? Will failure to do so violate federal tax requirements?
 2. We believe the use of Form 1099 Misc. is a better reporting system to the I.R.S. Do you agree?
 3. Will we violate the Arkansas Constitution by including gross amounts for personal use of state cars as wages on Form W2?
Prior to attempting to answer your specific questions, it is necessary to set out the relevant provisions of law. As you have noted, Amendment 56 to the Arkansas Constitution sets out the salaries of the constitutional officers and members of the General Assembly. Section 2 of that amendment provides as follows:
 The annual salaries of the officers of the Executive Department, which shall be paid in monthly installments, shall be as follows:
 the Governor, the sum of $35,000; the Lieutenant Governor, the sum of $14,000; the Secretary of State, the sum of $22,500; the Treasurer of State, the sum of $22,500; the Auditor of State, the sum of $22,500; the Attorney General, the sum of $26,500; and the Commissioner of State Lands, the sum of $22,500.
Additionally, Section 3 of the amendment governs the salaries of members of the General Assembly. It provides in pertinent part as follows:
 The members of the General Assembly shall receive as their annual salary the sum of $7,500, except the President Pro Tempore of the Senate and the Speaker of the House of Representatives, who shall each receive the sum of $10,000 annually, with such salaries to be payable in equal monthly installments.
The "public relations reimbursement" to which you refer is currently authorized by Act 223 of 1989 (an appropriations act). It appropriates nineteen thousand dollars per year to the Governor, fifteen thousand dollars per year to each of the other state constitutional officers, and ten thousand per year each to the President Pro Tempore of the Senate and the Speaker of the House of Representatives. Section 1 of that act is entitled "Purpose" and provides as follows:
 It has been found and is declared that because of the nature of the duties imposed upon them by the constitution, the officials hereinafter named are subject to great financial burdens, often approaching hardship, arising out of the necessity of maintaining satisfactory public relations with official guests of neighboring states, in the Federal Government, as well as other personages whose goodwill is essential to the welfare of the State of Arkansas.
 The remuneration of such officers is inadequate to bear this additional necessary expense, and there is urgent need to mitigate the inequity of this situation. It is therefore the purpose of this Act to promote the common good of the State of Arkansas by providing funds which will enable the named officials to continue beneficial public relations activities without personal financial hardships. . . .
In addition, Section 2 of the act provides that:
 The amount for public relations expenses as may be herein appropriated, shall be payable on the first day of each calendar month in each of the foregoing fiscal years, upon invoice submitted by the foregoing officials, said invoice to stipulate only that this is for expenses incurred in public relations activities. The Auditor of State, after receiving such invoice from the foregoing officials, shall issue a warrant drawn in favor of each of the officials named in Section 1 hereof, in an amount not to exceed 1/12 of the authorization allocated to each such official. . . .
In the Arkansas Supreme Court case you have cited, (Berry v. Gordon, supra), the court partially upheld and partially struck down a similar appropriations act. See Act 399 of 1961. As you have noted, the court held that there was no constitutional prohibition against state constitutional officers and members of the General Assembly receiving expenses for public relations activities in addition to their authorized salaries. The court also, however, struck down Section 3 of that act because it authorized monthly payments of public relations expenditures to these officers whether or not these expenditures had been incurred. As the court on rehearing stated:
 The vice in Section 3 was that it would have permitted the funds to be paid out even though the expense had not actually been incurred; so it was in substance a salary increase going beyond the limits set by the constitution.
237 Ark. 865, at 866.
However, the court held that the official who received the public relation accounts pursuant to Act 399 were not required to make an accounting of the expenditures.237 Ark. 547, at 559. Instead, the burden was upon a plaintiff challenging the expenditures to show that the public official had received monies in excess of actual public relations expenditures. 237 Ark. 867.
The foregoing provisions constitute the relevant state law pertaining to your questions. The relevant federal law is found in the Internal Revenue Code, 26 U.S.C. § 1
et seq. You have noted that the "recent passage of the Technical Miscellaneous Revenue Act of 1988 (TAMRA) . . . changed prior federal tax reporting requirements and the definition of wages for FICA and unemployment tax purposes. It appears to include expense allowances for which there is not an adequate accounting made to the employer . . . ." The definition of "wages" for FICA and unemployment tax purposes is found at 26 U.S.C. § 3121, and 3401 respectively. It is clear under these provisions and other relevant federal provisions, in my opinion, that at least some types of reimbursement plans must be included as "wages" on an employee's W2 form. See generally, 26 U.S.C. § 3121 (a)(20), 3401 (a)(19),26 U.S.C. § 132, 162 and 274(d). Additionally, it should be noted that, specifically, 62 of that title provides, as regards deductions from gross income to arrive at adjusted gross income, in pertinent part that:
 (a) General rules — For purposes of this subtitle, the term "adjusted gross income; means, in the case of an individual, gross income minus the following deductions:
 (2) Certain trade and business deductions of employees —
 (A) Reimbursed expenses of employees — The deductions allowed by part VI . . . which consist of expense paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer . . . .
(c) Certain arrangements not treated as reimbursement arrangements. For purposes of subsection (a)(2)(A), an arrangement shall in no event be treated as a reimbursement or other expense allowance arrangement if —
 (1) such arrangement does not require the employee to substantiate the expenses covered by the arrangement to the person providing the reimbursement, or
 (2) such arrangement provides the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement.
Presumably, it is the last subsection, (subsection c), to which you refer in your request. (It should be noted that this new subsection (c) was not added by the Technical and Miscellaneous Revenue Act of 1988 as you have noted, but was added by the "Family Support Act of 1988", P.L. 100-485, 702.)
Essentially, the regulations under Section 62, found at 26 C.F.R. 1.62-2T, categorize two different types of reimbursement plans: one which must be included as wages on the W2 form for FICA and unemployment tax purposes, and one which must not. These two types of plans are referred to as "accountable plans" and "nonaccountable plans". See 26 C.F.R. 1.62-2T(c)(2) and (3). An "accountable plan" is one which meets three requirements. The expenses must have a "business connection"; they must be substantiated; and the arrangement must require the employee to return any amount in excess of the substantiated expenses. See 54 F.R. 51022 and 51023. A "nonaccountable plan" is an arrangement which does not satisfy one or more of these requirements.
Amounts treated as paid under an "accountable plan" are excluded from the employee's gross income, are not required to be reported on the employee's Form W-2, and are exempt from withholding and payment of employment taxes. 26 C.F.R. 1.62-2T(c)(4). Amounts treated as paid under a nonaccountable plan are included in the employee's gross income, must be reported to the employee on Form W-2, and are subject to withholding and payment of unemployment taxes. 26 C.F.R. 1.62-2T(c)(5). See also 31.3121(a)-2T(a) and (b); 31.3231(a)-2T(a) and (b) and 31.3306(b)-2T(a) and (b). The effective date of these amendments was July 1, 1990. See 54 F.R. 51023.
Additionally, the definitions of "wages" under both FICA, 26 U.S.C. § 13121, and unemployment taxes, 26 U.S.C. § 3401, excludes anything which can be deducted under26 U.S.C. § 132 (fringe benefits). Regulations under that section require compliance with 26 U.S.C. § 162. See26 C.F.R. 1.132-5(a)(1)(v). Section 162 requires compliance with Regulations 1.62-2T quoted above. See also 54 F.R. 51026.
With the relevant law thus set out, we are prepared to address the first part of your first question, which is whether inclusion of the public relations reimbursements as wages on a W2 form of a state constitutional officer or member of the General Assembly will violate the salary provisions set out in Amendment 56 to our Arkansas Constitution.
As noted, under federal tax law, expense reimbursements must be treated as wages on a W2 form if they arise from a "nonaccountable plan", which plan includes a substantiation requirement. 26 U.S.C. § 3121, 3401, 132,162, 274 (d), 62, 26 C.F.R. 162-2T and 54 F.R. 51021 et seq. Under Berry v. Gordon, 237 Ark. at 559, public officials are not required to affirmatively prove that they incurred the public relations expenditures. Instead, a person challenging the reimbursements must prove that the reimbursements were not applied to public relations expenditures. 237 Ark. 867.
Under the differing state and federal standards, an Arkansas official's public relations reimbursements could qualify as wages for federal income tax purposes, yet be considered as expense reimbursements (not salaries) under Berry v. Gordon. This situation would occur if the official actually spent the reimbursements for public relations expenses yet failed to meet the substantiation requirements necessary to give rise to an "accountable plan" under I.R.S. regulations.
What is required to be reported or included on a federal tax form is not, therefore, controlling as to the question of what will violate our Arkansas Constitution. It is possible that our Supreme Court might consider this factor as one factor in the analysis of whether these reimbursements are actually "salary" prohibited by Amendment 56; but, in my opinion, it is not the decisive factor. The decisive factor in determining the constitutionality of these reimbursements, as laid down by Berry v. Gordon, supra, is whether they are taken by these officers with equivalent expenses actually being incurred. If not, then they are violative of Amendment56 of our Arkansas Constitution, and it is not relevant what is reported on the officer's federal tax forms. We should note, however, that this crucial inquiry involves questions of fact as regards each officer. It appears that Act 223 of 1989 (authorizing the reimbursements) provides for the supplying of a "bottom line only" invoice for payment. Whether or not the officers actually incur public relations expenses in the amount of the reimbursements claimed is a question of fact which this office is neither equipped nor empowered to determine. It thus appears that Act 223 cannot be said to be unconstitutional on its face. It is the action of the officers themselves which, according to individual facts, may violate our constitution. The Auditor's duty under Act 223 to issue warrants upon invoices submitted appears to be mandatory, however. The Act provides that "[t]he Auditor of State, after receiving such invoice . . . shall issue a warrant . . . ." (Emphasis added.) It thus may be contended that any challenge to a particular officer's reimbursement for expenses must be pursued through the judicial process.
As for the second part of your first question, you have asked whether the failure to report these public relations reimbursement funds on the official's W2 as "wages" will violate federal law. In my opinion this is a question for the I.R.S., but it involves a determination of whether the expenses are part of an "accountable" or "nonaccountable" plan. It appears on the face of Act 223 of 1989 (because there is no adequate substantiation requirement, see 26 U.S.C. § 274(d)) that these reimbursements would constitute "nonaccountable" plans, and thus failure to report them on Forms W-2 would violate federal law.
You note in your second question that you believe that the use of Form "1099 Misc." is a better reporting system to the I.R.S., and ask if we agree. This question is better addressed to the I.R.S., as our opinion on the topic is not controlling on that agency, but we should note that our research reveals that the answer to your question is "no". See26 C.F.R. 1.6041-2. These amounts, if from a "nonaccountable" plan, must be reported on Form W-2.
Finally, you have asked whether inclusion of gross amounts for personal use of state cars as "wages" on Form W2 will violate Amendment 56 of the Arkansas Constitution. The answer to this question will depend upon whether the value of the use of such vehicles is an impermissible "salary" increment in excess of the amounts set out in Amendment 56. Our Supreme Court has not addressed this question. It would be guided, in my opinion, by its earlier decisions concerning what constitutes "salary". See generally Hestand v. Erke,227 Ark. 309, 298 S.W.2d 44 (1957), and Parker et al v. Arkansas Real Estate Commission, 256 Ark. 149,506 S.W.2d 125 (1974), (holding that the "word `salary' denotes payment at regular intervals or fixed compensation regularly paid, as by the year, quarter, month or week" or as "a stated compensation amounting to so much by the year, month, or other fixed period.")
These cases involved the definition of "salary" as it relates to pension benefits and they appear to be the only Arkansas cases construing the definition of the term "salary". Cases from other jurisdictions, however, have construed the term "salary" as being distinct from fringe benefits and expenses such as the use of state cars. See e.g., Holmes v. State Officers Compensation Commission, 57 Mich. App. 255,266 N.W.2d 90 (1974). It is my opinion that although there are no Arkansas cases precisely on point, it may reasonably be concluded that the provision of an automobile to a state officer does not fall within the definition of "salary" as it is used in Amendment 56.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
/s/ Ron Fields Attorney General
RF:arb