Mr. Randy Sims, Chairman Board of Trustees University of Central Arkansas 201 Donaghey Avenue Wingo Hall, Suite 207 Conway, Arkansas 72035
Dear Mr. Sims:
This is in response to your request for an opinion on several questions concerning "certain provisions of Arkansas law dealing with cash funds of a university, salaries and compensation arrangements." Specifically, you pose the following three questions:
 (1) Are "cash funds" held by an institution of higher education and paid to the institution by private companies operating the institution's food service and bookstore, "public funds" of the institution, or are such cash funds "private funds" of the university?
 (2) If such funds, even though paid to the institution by private businesses, are deemed to be "public funds" are those cash funds subject to appropriations acts of the general assembly?
 (3) May an employee listed in Section 6-63-309 of the Arkansas Code receive an amount in excess of the maximum salary level established in the institution's appropriation act plus twenty-five percent (25%) under any of the following scenarios:
 (a) from cash funds of the institution, if the cash funds are paid to the institution by private companies providing food service and the campus bookstore, and the payment is salary? *Page 2 
 (b) from cash funds of the institution, if the cash funds are paid to the institution by private companies providing food service and the campus bookstore, and the payment is a bonus?
 (c) from cash funds of the institution, if the cash funds are paid to the institution by private companies providing food service and the campus bookstore, and the payment is pursuant to a "plan of deferred compensation" adopted by the board of trustees and funded with such cash funds?
RESPONSE
In response to your first question, it is beyond dispute, in my opinion, that "cash funds" of a public university are public, rather than private funds. In response to your second question, although the Arkansas Constitution does not require "cash funds" of universities to be appropriated, the Arkansas General Assembly has imposed an appropriation requirement for most "cash funds" by statute, exempting only particular categories of funds. Although I have not been presented with detailed facts regarding the particular funds in question, it appears that they are not exempted from the appropriation requirements of the applicable subchapter. In response to the first two parts of your third question, it is my opinion that the answers are "no" and "no." "Cash funds" of a public university may not be used to supplement an employee's salary, or form the basis of a "bonus" in excess of the amounts established by the General Assembly. See Arkansas Constitution, article 16, § 4. In response to the final portion of your third question, regarding a "plan of deferred compensation," in my opinion the answer is likewise "no," assuming your question does not refer to one of the statutorily-authorized tax-qualified retirement or investment plans offered to university employees.
Question 1 — Are "cash funds" held by an institution of highereducation and paid to the institution by private companies operating theinstitution's food service and bookstore, "public funds of theinstitution, or are such cash funds "private funds" of theuniversity?
In my opinion it is beyond dispute that "cash funds" held by a public university are public funds. *Page 3 
"Cash funds" have been discussed in several decisions of the Arkansas Supreme Court. In Gispson v. Ingram, 215 Ark. 812, 223 S.W.2d 595
(1949), for example, the court described "cash funds" as "those received by the state agencies and institutions from sources other than taxes, as the term `taxes' is ordinarily used." Id. at 817. In Ingram, the court addressed fees derived from such sources as "students' fees, sale of farm produce, dormitory charges, etc." The term "cash funds" has subsequently been defined by statute. See A.C.A. § 19-4-801(1) (Repl. 2007) ("Cash funds" means all moneys, negotiable instruments, certificates of indebtedness, stocks, and bonds held by or owned by any state agency which are not on deposit with or in the trust of the Treasurer of State . . .").
It is clear, in my opinion, that such "cash funds" are public funds.See Parker et al. v. Arkansas Real Estate Commission, 256 Ark. 149,506 S.W.2d 125 (1974) ("What is important, as we pointed out inIngram, is that all cash funds of state agencies are public monies.")See also Ingram, supra (referring to "cash funds" as "public money" (id. at 818); noting that the litigants in Ingram conceded at oral argument that the funds were public moneys (id. at 819); and concluding that cash funds were "public money," id . at 820).
In my opinion, therefore, in answer to your first question, "cash funds" of public universities are public funds and not "private funds" of the university.
Question 2 — If such funds, even though paid to the institution byprivate businesses, are deemed to be "public funds" are those cash fundssubject to appropriations acts of the general assembly?
Although the Arkansas Constitution does not impose any appropriation requirement for "cash funds," the Arkansas General Assembly has imposed that requirement for most such funds by statute. This issue was discussed in the Ingram case discussed above — the "so-called `Cash Fund' case" — which was decided in 1949. Id. at 813. The first issue discussed in the Ingram case was whether "cash funds" of state agencies and institutions, including universities, were required by the Arkansas Constitution to be deposited into the State Treasury and subjected to appropriations of the General Assembly. The court concluded that the Arkansas Constitution did not require the deposit of "cash funds" into the State Treasury. Because the funds were not required to be placed into the State Treasury, no *Page 4 
constitutional appropriation requirement obtained. See Arkansas Constitution, art. 5, § 29 and art. 16, § 12.[1] The court stated:
 The Legislature could require that all these funds be paid into the state treasury, and the Legislature could require that none of these funds be expended without appropriation by the Legislature. But the question here is not what the Legislature might do with these funds. The question is whether the Constitution requires that all these moneys be paid into the state treasury. We find no such provision.
Id. at 819.
Subsequent to the Ingram decision, the Arkansas General Assembly passed a law to require the appropriation of "cash funds." The law in this regard is currently codified at A.C.A. §§ 19-4-801 through-816 (Repl. 2007). That subchapter applies to "state agenc[ies]," which are defined as including "state-supported institutions of higher learning." A.C.A. § 19-4-801(2)(A). The subchapter states that: "Cash funds of the various state agencies defined in § 19-4-801 shall be budgeted and proposed expenditures approved by enactments of the General Assembly." A.C.A. § 19-4-802(a). Subsection (b) of the last-mentioned statute states that: "The General Assembly shall budget, approve, and appropriate expenditures of cash funds by the enactment of separate appropriation bills setting forth the purpose for which the moneys are to be expended and the dollar amount to be expended for such purpose."
A number of exemptions to these requirements are listed in A.C.A. § 19-4-803, which provides in pertinent part as follows:
 Funds required by the terms of a bond indenture to be held by paying agents for the payment of interest and principal on such bonds; petty cash funds held by the various state agencies; memorials, endowments, bequests, gifts, and donations made to *Page 5 
any state agency other than for normal operation of the agency; canteen funds of state agencies other than institutions of higher learning, wherein the profits earned are used for the benefit of the people served by that agency through the purchase of services or goods other than normal salary or maintenance expenses of the agency . . . and any other funds determined by the Chief Fiscal Officer of the State or the General Assembly, to be held in trust, and on deposit in a financial institution other than the State Treasury shall be exempt from the provisions of this subchapter.
A.C.A. § 19-4-803(a) (Repl. 2007).
I have not been presented with any detailed facts regarding the precise funds in question, other than their general description as "cash funds" held by an institution of higher education and paid to the institution by private companies operating the institution's food service and bookstore. . . ." I thus cannot determine conclusively whether they are "petty cash funds . . . memorials, endowments, bequests, gifts, and donations made to any state agency other than for normal operation of the agency" or "other funds determined by the Chief Fiscal Officer of the State or the General Assembly, to be held in trust. . . ." This determination would be one of fact, in light of all the surrounding circumstances. It appears that the funds would not fall within the excluded category of "canteen funds," because that exemption does not cover such funds of universities. Although it may involve a determination of fact, it does not appear from the limited facts presented that the described funds are exempted by A.C.A. § 19-4-803
from the appropriation requirements of the applicable subchapter. I will note in this regard, that the University of Central Arkansas' appropriation act contains various appropriations of "cash funds."See Acts 2007, No. 1253, §§ 4, 6.
With regard to your several questions concerning the compensation of employees, however, the primary obstacle to the use of "cash funds" for such purposes is not the requirement of an appropriation, but the constitutional power of the General Assembly to set the salaries of public officers and employees under Arkansas Constitution, art. 16, § 4. That provision will be discussed in more detail in response to your third question below. *Page 6 
Question 3(a) — May an employee listed in Section 6-63-309 of theArkansas Code receive an amount in excess of the maximum salary levelestablished in the institution's appropriation act plus twenty-fivepercent (25%) . . . (a) from cash funds of the institution, if the cashfunds are paid to the institution by private companies providing foodservice and the campus bookstore, and the payment is salary?
In my opinion, the answer to this question is "no."
Section 6-63-309 of the Arkansas Code is a provision of the "Higher Education Expenditure Restriction Act." See A.C.A. §§ 6-63-301
through-315 (Repl. 2003 and Supp. 2007). It provides in pertinent part as follows:
 6-63-309. Academic personnel recruitment — Exceptions to maximum salary
 In order that exceptionally well-qualified academic personnel may be recruited and retained, each state-supported institution of higher education may exceed the maximum salary levels by no more than twenty-five percent (25%) for no more than ten percent (10%) of the positions authorized in its biennial operations appropriation act as president, chancellor, academic dean, division head or chair, department chair, distinguished professor, university professor, professor, associate professor, assistant professor, instructor, extension specialist IV, extension specialist III, extension specialist II, extension specialist I, county extension agent-chairman II, or county extension agent-chairman I.
A.C.A. § 6-63-309(a) (Repl. 2003) (emphasis added).
As noted in an opinion by one of my predecessors, this statute "contains the 125% cap . . . and contemplates the additional payments from public funds." (Emphasis original). Op. Att'y Gen. 98-156
at 3.[2] Your question is whether an employee *Page 7 
listed above may receive salary in excess of the 125% cap, from "cash funds" of the university derived from the food service and campus bookstore payments you describe.
In my opinion, the answer to this question is clearly "no." A similar issue was discussed in the Ingram case mentioned earlier in this opinion. The second issue discussed in that case (after the necessity of appropriating "cash funds"), was whether "cash funds" could be used to supplement the salaries of state employees in amounts greater than the amounts fixed by the General Assembly. The Arkansas Supreme Court stated:
 Some of the legislative appropriation acts for the state agencies and institutions by express language have limited the salaries of various employees to amounts not in excess of those expressed. The proof in this case shows that, notwithstanding such restrictive language, some of the state agencies and institutions have used some of the cash funds to supplement such salaries, with the result that some employees are receiving salaries greater than those fixed by the Legislature, as aforesaid. This is an illegal procedure, and the appellant is entitled to have an injunction against such procedure. Art. XVI, 4
of the Constitution of Arkansas says: ". . . and the number and salaries of the clerks and employees of different departments of the State shall be fixed by law."
Id. at 819.
The constitutional provision invoked above (art. 16, § 4), provides in full that:
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the *Page 8 
clerks and employees of the different departments of the State shall be fixed by law.
The court in Ingram concluded by stating that: "We hold that when the Legislature fixes the maximum annual salary of an employee, then no state agency or institution may use any part of its cash fund to supplement or enlarge the salary so fixed by the Legislature. . . ."Id. at 821.
For purposes of your question, A.C.A. § 6-63-309, in conjunction with the applicable appropriation act, fixes the allowable public salary payable to an employee listed in A.C.A. § 6-63-309.[3] In my opinion, therefore, in response to the first part of your third question, "cash funds" of an institution of higher education may not be used to exceed the 125% cap set by A.C.A. § 6-63-309 and the applicable appropriation act. See Gipson v. Ingram, supra and Arkansas Constitution, art. 16, § 4. See also Gipson v. Crawfis, 225 Ark. 903, 286 S.W.2d 336 (1956) (". . . the cash fund of any institution may be used for almost unlimited purposes aside from increasing salaries").[4]
 Question 3(b) — May an employee listed in Section 6-63-309 of theArkansas Code receive an amount in excess of the maximum salary levelestablished in the institution's appropriation act plus twenty-fivepercent (25%) . . .(b) from cash funds of the institution, if the cashfunds are paid to the institution by private companies providing foodservice and the campus bookstore, and the payment is a bonus? *Page 9 
In my opinion, the answer to this question is also "no." The only difference between this question and the preceding question is the characterization of the additional compensation as a "bonus." Both A.C.A. § 6-63-309 and the applicable appropriation act (Acts 2007, No. 1253), refer to, and restrict, the payment of "salary." Your question is whether such salary may be supplemented by cash funds in excess of the amounts set by these provisions, if the additional compensation is denominated as a "bonus." In my opinion, regardless of the moniker given the payment, additional compensation is prohibited unless authorized by law. In this regard, A.C.A. § 19-4-1601(b)(3)C) (Repl. 2007), a provision of the "Regular Salaries Procedures and Restrictions Act" provides that:
 No employee authorized by the General Assembly shall receive from appropriated or cash funds, either from state, federal, or other sources, compensation in an amount greater than that established by the General Assembly as the maximum annual salary for the employee unless specific provisions are made therefor by law. . . .
(Emphasis added). See also A.C.A. § 21-5-101(b)(3)(C) (Repl. 2004); Acts 2007, No. 1253, § 15.
An analogous issue was discussed in Parker et al., v. Arkansas RealEstate Commission, supra. In that case, the Arkansas Real Estate Commission, which operated as a "cash fund" agency supported by licensing fees, adopted a "pension plan" for two employees of the Commission. The "pension plan" was funded by the Commission out of its "accumulated resources," and the employees made no contributions. At some later point, the Commission refused to pay the lump sum benefits to which the employees believed themselves entitled. The employees sued for the amounts due under the plan. The Commission defended on the grounds that the plan was illegal and void from its inception. In response to these arguments, the Court stated:
 The appellants, in insisting that the pension plan is valid, rely primarily upon three cases involving what have become known in Arkansas as cash funds. Gipson v. Ingram, 215 Ark. 812, 223 S.W.2d 595 (1949); Gipson v. Crawfis, 225 Ark. 903, *Page 10 286 S.W.2d 336 (1956); and Rebsamen Motor Ca. v. Phillips, 226 Ark. 146, 289 S.W.2d 179, 57 A.L.R.2d 1256 (1956).
 * * * The appellants' emphasis upon the cash-fund aspect of the case is misplaced. That the Commission's revenues were not deposited in the state treasury and therefore were cash funds is immaterial to the determination of the issues. What is important, as we pointed out in Ingram, is that all cash funds of state agencies are public monies. The case at bar turns not upon the cash-fund character of the Commission's revenue but upon the public character of that revenue.
 The Commission was not at liberty to spend public money for any purpose it might choose, regardless of statutory authority. . . .
256 Ark. at 151-52.
The court concluded that the applicable statutes did not invest the Commission with any authority to establish a pension plan for its employees.
Similarly, in my opinion, cash funds of an agency or institution may not be used to provide a "bonus" to a state employee where the payment exceeds the maximum limits authorized by law, and where the payment is not authorized by any other statute. See again, A.C.A. § 19-4-1601(b)(3)(C).[5]
Question 3(c) — May an employee listed in Section 6-63-309 of theArkansas Code receive an amount in excess of the maximum salary levelestablished in the institution's appropriation act plus twenty-fivepercent (25%) . . .(c) from cash funds of the institution, if the cashfunds are paid to the institution by private companies providing foodservice and the campus bookstore, and the *Page 11 payment is pursuant to a "plan of deferred compensation" adopted by theboard of trustees and funded with such cash funds?
In my opinion the answer is likewise "no," assuming your question does not refer to one of the statutorily-authorized tax-qualified retirement or investment plans offered to university employees.
I am uncertain, as an initial matter, as to what is meant by your reference to a "plan of deferred compensation." Again, however, as concluded above, "cash funds" of an agency or institution may not be used to provide compensation to public employees over the limits set by law, in the absence of statutory authorization.
The General Assembly has provided certain statutory authority for tax-qualified "defined contribution plans" whereby university employees may defer income. See, e.g., 24-7-808 (Supp. 2007) (authorizing university employees to participate in an "alternate retirement plan" and authorizing the university to make contributions on behalf of staff members toward the plan). See also Op. Att'y Gen. 2006-130 (describing a community college's participation in "TIAA-CREF," a "so-called 403(b) plan," under which employees may defer compensation, as the "alternate retirement plan" under in A.C.A. § 24-7-801 et seq.).[6]
Assuming your question does not refer to any such statutorily-authorized plan, in my opinion the answer to your question is "no," cash funds may not be used to provide a "plan of deferred compensation," in excess of the statutorily-authorized compensation for a university employee. A similar conclusion was reached by one of my predecessors in Op. Att'y Gen. 2002-109. In that opinion, the question posed was whether a community college could fund an "executive benefit plan" for its President, which involved the procurement of life insurance policies, which would provide plan benefits to him (policy loans), after termination of his employment. One issue presented was whether the plan would violate the "Higher Education Expenditure Restriction Act" (A.C.A. §§ 6-63-301 — 315). My predecessor *Page 12 
concluded that the plan was unauthorized "unless it was executed under some existing statutory authority governing employee benefit plans at community colleges." Id. at 2. He also concluded that the "Higher Education Expenditure Restriction Act" did not prevent the receipt of employee benefits over and above salary, so long as the benefits were authorized by statute. No such statute authorized the plan at issue in Op. Att'y Gen. 2002-109. The Attorney General stated:
 In my opinion, in order to be legal, the plan referenced in your request must be offered and executed in accordance with some applicable statutory grant of authority in this regard. [Footnote omitted]. This is particularly true where, as here, the plan would be one funded by the state agency or institution rather than solely by the employee.
 * * * Without some statutory authority for the proposed benefit plan, the authority of [the community college] to fund the plan described in your request is questionable.
Op. 2002-109 at 3-4.
As for the provisions of the "Higher Education Expenditure Restrictions Act" (specifically A.C.A. § 6-63-307), the Attorney General stated:
 In my opinion the restriction above does not prevent employees from receiving lawful employee benefits, over and above their salaries, so long as some statute authorizes their receipt. In this regard the maximum annual salary provision above does not limit or restrict, for example, authorized retirement or insurance benefits provided to employees of these institutions. The primary obstacle with the "secured executive benefit plan" in question is that is does not appear that it is authorized by any pertinent law.
Id. at 6. *Page 13 
Similarly, in my opinion, "cash funds" of an institution may only be used to fund a "plan of deferred compensation" in excess of the statutory compensation limits, where the plan in question is authorized by statute. Assuming the particular "plan of deferred compensation" to which you refer is not authorized by statute, in my opinion the answer to this part of your third question is "n o" cash funds may not be used to support it.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:cyh
[1] These provisions provide, respectively, in pertinent part that: "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law. . ." and "No money shall be paid out of the treasury until the same shall have been appropriated by law. . . ."
[2] My predecessor also discussed another statute in Opinion 98-156
— A.C.A. § 6-62-103 (Repl. 2003) — which authorizes certain additional salary and salary-related payments for employees of institutions of higher education. This statute allows the additional salary or salary-related payments to exceed the maximum authorized compensation set by law, but only if the funds are provided by "private contributions or from the proceeds from private contributions designated for such purposes." Id. at (d) and (e)(2).
[3] Again, a separate statute regulates the compensation that may be received from "private contributions . . . designated for such purposes." In Op. Att'y Gen. 98-156, my predecessor noted the court's statement in Ingram that "[n]o injunction should prohibit the supplementation of salaries by the use of funds given for salary purposes by sources not controlled by the Legislature, such as private donations and federal grants," and observed that "[t]his language . . . which might be fairly characterized as dicta, implies that there is no constitutional objection, under art. 16, § 4, to the private supplementation of state salaries." Op. 98-156 at n. 1.
[4] In my opinion, this result is not changed by a university's "cash contingency" appropriation (see, e.g., Acts 2007, No. 1253, § 6), which appropriates "cash funds" "for personal services and operating expenses which may be transferred and added to any appropriation line item payable from cash funds. . . ." Although this provision grants appropriation authority in addition to established line-items, it may not, in my opinion, be used to increase the salaries set by the General Assembly pursuant to article 16, § 4.
[5] As noted previously, A.C.A. § 6-62-103 provides statutory authority for additional "salary or salary-related payments" to certain university employees where the funds are derived from "private contributions."
[6] See also, A.C.A. § 24-7-1201 through-1206 (authorizing state employees who are members of the Arkansas Teacher Retirement System to participate in a "school employees' individual retirement account plan and any other tax deferral plan permitted by federal law. . . ."). This subchapter, however, appears to contemplate only deductions from an employee's previously-authorized compensation, and does not expressly mention any additional amounts contributed by the employer. It is therefore likely not implicated by your question regarding the use of "cash funds." *Page 1