

# SUPREME COURT OF ARKANSAS



No. CV–13–1051

|  |  |
|---|---|
| GREG BOWERMAN, INDIVIDUALLY AND AS A CLASS REPRESENTATIVE ON BEHALF OF ALL TAXPAYERS WITHIN THE STATE OF ARKANSAS **PETITIONER** | **Opinion Delivered** September 25, 2014 |
|  | CERTIFIED QUESTIONS FROM UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA [NO. 6:12-CV-01590-RFD] |
| V. |  |
|  | HONORABLE REBECCA F. DOHERTY, JUDGE |
| TAKEDA PHARMACEUTICALS U.S.A., FORMERLY KNOWN AS TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.; TAKEDA GLOBAL RESEARCH AND DEVELOPMENT CENTER, INC.; TAKEDA PHARMACEUTICAL CO. LTD.; TAKEDA PHARMACEUTICALS AMERICA, INC.; TAKEDA CALIFORNIA, INC., FORMERLY KNOWN AS TAKEDA SAN DIEGO, INC.; TAKEDA PHARMACEUTICALS INTERNATIONAL, INC.; TAKEDA PHARMACEUTICALS, LLC.; ELI LILLY AND CO.; AND STEPHEN L. LAFRANCE PHARMACY, LLC **RESPONDENTS** | <u>CERTIFIED QUESTIONS ANSWERED</u>. |

**KAREN R. BAKER, Associate Justice**

This case involves two questions of Arkansas law certified to this court by the United

States District Court for the Western District of Louisiana in accordance with our Supreme

Court Rule 6-8 (2014), and accepted by this court on January 9, 2014. *See In re Actos*

*(Pioglitazone) Prods. Liab. Litig.*, 2014 Ark. 3, 431 S.W.3d 275 (per curiam). The certified



questions are as follows:

> Does Article 16 § 13 of the Arkansas Constitution provide Greg Bowerman with a claim for illegal exaction under the facts and circumstances provided in this case? If so, does that claim extend to both theories proffered by Bowerman (i.e., product liability and unfair trade practices) and each of the remedies requested?
>
> Is *Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967), still good law in Arkansas? Does Nelson embrace the expansive reading presented by Bowerman, or the more narrow reading argued by defendants, or is Nelson applicable to the facts and circumstances of this case?

We answer both questions in the negative.

Greg Bowerman, as a representative of a constitutional class-action of citizen-taxpayers of the State of Arkansas, brought a case against Takeda Pharmaceuticals U.S.A., Inc., formerly known as Takeda Pharmaceuticals North America, Inc.; Takeda Global Research and Development Center, Inc.; Takeda Pharmaceutical Co. Ltd.; Takeda Pharmaceuticals America, Inc.; Takeda California, Inc. formerly known as Takeda San Diego, Inc.; Takeda Pharmaceuticals International, Inc.; Takeda Pharmaceuticals, LLC.; Eli Lilly and Co.; and Stephen L. LaFrance Pharmacy, Inc.[1], (collectively "Respondents"), alleging that an illegal exaction had taken place.

Bowerman initially filed the case in the Circuit Court of Saline County, Arkansas, on December 1, 2011. The case was removed to federal court in Arkansas, the United States District Court for the Eastern District of Arkansas, pursuant to the Class Action Fairness Act (21 U.S.C. § 1332(d)) on March 12, 2012. It was then transferred to the United States District Court for the Western District of Louisiana to be included in the multidistrict

---

[1]Stephen L. LaFrance Pharmacy, Inc., was never served and has not appeared in any proceedings.

SLIP OPINION

litigation pending before that court on June 15, 2012. Repsondents filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on May 31, 2013, alleging that Bowerman had failed to state a claim upon which relief could be granted. Bowerman filed a response on July 3, 2013. The Court certified the questions to us in a certification order dated November 7, 2013. This order set out the factual allegations as follows:

> The Respondents were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling pioglitazone, under the trade name "Actos" for the treatment of Type II diabetes mellitus. Actos was approved by the Food and Drug Administration ("FDA") in July of 1999 as a treatment for diabetes and is sold in several forms. It is alleged Pioglitazone has caused bladder cancer and other side effects, through a defective design and/or flaws in manufacturing.
>
> Intentionally or otherwise, it is alleged Respondents violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq., including both statutory and regulatory standards. It is alleged Respondents knew or should have known that Actos had the potential to cause bladder cancer, heart attacks and other cardiovascular problems, and concealed their knowledge of these potential side effects from the public as well as the State of Arkansas and its physicians. As a result of being prescribed Actos for many years, Bowerman alleges Arkansas citizens have been permanently and severely injured, having suffered serious consequences from long-term Actos use. As a result, it is alleged the State and its prescribing physicians were unaware and could not reasonably have known or have learned through reasonable diligence, that Arkansas citizens whose health care is subsidized with public funds were being exposed to the risk of the side effects described above, and that those risks were the direct and proximate result of the Respondents' acts, omissions, and misrepresentations.
>
> The State of Arkansas provides reimbursement for medical products and services provided to some of its citizens. Under the State program, Arkansas citizens were prescribed and began taking Actos upon direction of their physicians; some citizens subsequently developed bladder cancer and other side effects, allegedly caused by Actos. It is alleged Arkansas citizens have (and had) several safer alternative products available to treat the conditions they have. Moreover, Arkansas citizens and physicians allegedly have not been adequately warned about the significant risks and lack of benefits associated with long-term Actos therapy.
>
> Additionally, the Respondents allegedly engaged in unfair methods of competition and unfair and deceptive trade practices by making false representations that Actos was better at lowering blood sugar than existing medications and could decrease diabetics' cardiovascular risks. As a result, plaintiff alleges the State of

Arkansas spent millions of its citizens' dollars on an overpriced, harmful drug.

Bowerman further alleges the State of Arkansas, and its citizens, have borne (and continue to bear) the treatment costs for heart attacks, heart injury, excessive fluid retention, fluid overload disease, liver damage, liver failure, strokes and/or server injury to the heart leading to cardiac arrest, bladder cancer, and death, allegedly caused by Actos. The State allegedly would not have purchased Actos for the benefit of its citizens had Respondents properly disclosed the risks associated with its long-term use. Therefore, the taxpayers of Arkansas allegedly have paid public funds to the Respondents that, absent the Respondents' illegal actions, would have remained in the Treasury. As a further result of the Respondents' actions and inactions, it is alleged the State Treasury was diminished because the State paid to treat Arkansas citizens injured due to the ingestion of Actos, which caused and will continue to cause Bowerman various injuries and damages.

While the first question certified to this court actually consists of two separate questions, we will focus only on the first as we find it dispositive of the issue. Does article 16, section 13 of the Arkansas Constitution provide Bowerman with a claim for illegal exaction under the facts and circumstances provided in this case? We hold that it does not.

Article 16, section 13 of the Arkansas Constitution states that any citizen of any county, city, or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever. An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Carnegie Pub. Library of Eureka Springs v. Carroll Cnty.*, 2012 Ark. 128. Two types of illegal-exaction cases can arise under article 16, section 13: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal tax" cases, where the plaintiff asserts that the tax itself is illegal. *Id*. Here, the question before us involves a "public funds" case, because Bowerman only asserts that public funds were used improperly. He does not assert that any of the taxes used to generate



the public funds are illegal.

It is uncontested that Bowerman has not used or purchased Actos. However, as this is an illegal-exaction claim, there is no question that Bowerman has standing. Citizens have standing to bring a public-funds case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). Thus, the only standing requirements we have imposed in public-funds cases is that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. *Id.* We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor have we required the plaintiff to establish a significant tax contribution to the state treasury. *Id.* Hence, in public-funds cases we have given the word "interested" as used in article 16, section 13, a very broad construction. *Id.* The Court found that Bowerman was a citizen of Arkansas and a taxpayer. Therefore, Bowerman has standing to bring the claim.

However, simply because Bowerman has standing does not mean that his claim is properly brought. Before a public-funds type of illegal exaction will be allowed to proceed, there must be facts showing that monies generated from tax dollars or arising from taxation are being misapplied or illegally spent. *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377. Any arbitrary or unlawful action exacting taxes or tax revenues may be restrained and annulled by a taxpayer affected by such procedure. *Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967). Therefore, in order to state a claim for an illegal exaction, Bowerman

must allege that the expenditure was illegal, misapplied, or arbitrary.

Bowerman does not assert that the action of the State in expending funds on Actos was unlawful. Nor can he, as the State is authorized by Arkansas Code Annotated section 19-5–306(10)(a)(viii) (Supp. 2013) to use State funds to pay for prescription drugs. Bowerman also does not allege that the funds were misapplied or arbitrarily spent. In fact, Bowerman does not allege any wrongdoing on the part of the State in expending these funds. All the wrongdoing that Bowerman alleges is on the part of the Respondents.

Even if Bowerman alleged wrongdoing in the use of state treasury funds, his allegations would not be sufficient to state a claim for illegal exaction. Actos was prescribed by physicians in the State of Arkansas, and certain amounts of the payments for these drugs were reimbursed by the State. Nothing in the Arkansas Code that indicates that the State could choose not to reimburse properly prescribed pharmaceuticals. Further, because the pharmaceuticals were prescribed by a physician, reimbursement for them cannot be said to be arbitrary. In *Nelson*, *supra*, the plaintiff alleged that the State overpaid for asphalt that was inferior to the grade of asphalt contracted by the State. Unlike *Nelson*, here the State paid reimbursement for exactly the drug that was prescribed. Thus, Bowerman's claim fails as a matter of law.

Because we have answered this question in the negative, we need not address the rest of the first certified question as to whether Bowerman's claims extend to product liability, unfair trade practices, and the remedies that Bowerman requests.

We restate the second certified question thus:

Is *Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967), applicable to the facts and circumstances of this case? If so, is *Nelson* still good law in Arkansas? Does *Nelson*

embrace the expansive reading presented by Bowerman, or the more narrow reading argued by defendants?

We answer the first part of this question in the negative as well. Because we hold that Bowerman has not stated a claim for illegal exaction, *Nelson*, *supra*, has no application to the facts asserted by Bowerman.

We decline to answer the rest of that certified question as it would be advisory. A high court's answer to a certified question is not an improper advisory opinion so long as (i) a court addresses only issues that are truly contested by the parties and are presented on a factual record; and (ii) the court's opinion on the certified question will be dispositive of the issue, and res judicata between the parties. *Longview Prod. Co. v. Dubberly*, 352 Ark. 207, 99 S.W.3d 427 (2003) (per curiam). Here, because *Nelson* does not apply, our answer to the rest of the second certified question would not be dispositive of any issue between the parties. Thus, an answer to the second certified question would be advisory and we decline to answer it.[2]

Certified questions answered.

CORBIN, DANIELSON, and HOOFMAN, JJ., concur in part and dissent in part.

**PAUL E. DANIELSON, Justice, concurring in part and dissenting in part.** I agree with the majority's answer to the first certified question in this case—the facts and circumstances presented do not provide Bowerman with a claim for illegal exaction. However, I write separately because I would also address the second certified question. The

---

[2]While the dissent asserts that we should take this opportunity to overrule *Nelson*, *supra*, to the extent that it conflicts with this court's decision here, we do not lightly overrule cases and apply a strong presumption in favor of the validity of prior decisions. *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008). We should not overrule a fifty-year-old precedent without a fully developed record before us, particularly when that case has no bearing on the facts before us.

majority incorrectly holds that because it answers the first certified question in the negative, *Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967), does not apply to this case and any discussion of the propriety of the holding in *Nelson* would be advisory. In my opinion, *Nelson* is directly on point to the present case; thus, this court must either distinguish it or overrule it to the extent it conflicts with the court's holding.

In *Nelson*, this court allowed a private citizen to pursue an illegal-exaction suit against several oil companies wherein Nelson alleged that the state highway department had overpaid for the purchase of asphalt to construct highways because the oil companies had colluded to fix prices far in excess of the fair market and customary value of asphalt in adjoining territories. Nelson's theory was that the grades and quantities of asphalt sold to the taxpayers of Arkansas were of a lower grade and quantity than paid for by the highway department. He alleged that the oil companies had unlawfully received over three million dollars in taxpayer funds. After the circuit court sustained the oil companies' demurrers, it dismissed the complaint. On appeal, this court reversed the circuit court, focusing on the breadth of article 16, section 13 of the Arkansas Constitution. We noted that an illegal exaction encompasses "both direct and indirect illegal exactions, thus comprehending any attempted invalid spending or expenditure by any government official." 242 Ark. at 277, 413 S.W.2d at 49 (citing *Quinn v. Reed*, 130 Ark. 116, 197 S.W. 15 (1917), and *Farrell v. Oliver*, 146 Ark. 599, 226 S.W. 529 (1921)). "With little limitation, almost any misuse or mishandling of public funds may be challenged by a taxpayer action." *Id.* at 277, 413 S.W.2d at 49.

As the federal district court's certification order aptly points out, *Nelson* appears to support two propositions. First, that a citizen-taxpayer may sue private defendants for illegal

exaction. Second, that even when the state has proper authorization to distribute money, an illegal-exaction suit may be sustained where a nongovernment third party acted illegally. Both propositions support Bowerman's illegal-exaction claim, and I submit that this court must answer whether *Nelson* is still good law in light of its holding that Bowerman's complaint fails to support a claim for illegal exaction.

Consequently, to the extent that *Nelson* is inapposite, it should be overruled. In my opinion, it is difficult to distinguish *Nelson* from the present case. Although Takeda attempts to distinguish *Nelson* on the basis that the challenged appropriation was illegal at the time it was made (when the state paid for the asphalt at a price-fixed amount) versus the appropriation in the present case, which becomes illegal at some future, indeterminate time (when a court of law determines that Takeda is liable under either theory presented), I think this distinction is without merit. Importantly, at the time it purchased the asphalt, the State was sufficiently authorized to do so. No court had yet determined that the oil companies had acted unlawfully. Similarly, no court has yet found that Takeda is liable for any wrongdoing connected to its Actos-related medications.

Moreover, the majority distinguishes *Nelson* on the basis that Nelson alleged that the State overpaid for asphalt of an inferior grade than what had been contracted for, whereas in the present case, the State paid for exactly the drug that was prescribed by a physician. The majority misses the point. The State was authorized to pay the expenditure in both instances; potential third-party liability in no way transforms the lawful expenditure by the State into an illegal exaction.

Because I can find no significant difference between the present case and the *Nelson*

9



case, I would overrule it to the extent it conflicts with this decision.

CORBIN and HOOFMAN, JJ., join in this opinion.

*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter*, for petitioner.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Lyn P. Pruitt* and *Kevin M. Lemley*, for respondents.