Cite as 2023 Ark. 56

# SUPREME COURT OF ARKANSAS

**No.** CV-21-265

| | |
|---|---|
| JAMES PARSONS, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED TAXPAYERS<br>APPELLANT<br><br>V.<br><br>PREFERRED FAMILY HEALTHCARE, INC., A MISSOURI CORPORATION D/B/A HEALTH RESOURCES OF ARKANSAS, DECISION POINT, DAYSPRING BEHAVIORAL HEALTH SERVICES, AND WILBUR D. MILLS TREATMENT CENTER<br>APPELLEE | **Opinion Delivered:** April 6, 2023<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-20-1302]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br><u>REVERSED AND REMANDED; COURT OF APPEALS OPINION VACATED</u>. |

**ROBIN F. WYNNE, Associate Justice**

James Parsons appeals from an order dismissing his illegal-exaction complaint with prejudice under Arkansas Rule of Civil Procedure 12(b)(6) for failure to state facts upon which relief can be granted. On appeal, Parsons argues that (1) the circuit court incorrectly rendered factual findings contrary to the allegations in his complaint; and (2) the circuit court erred in finding that the facts alleged in the complaint did not constitute an illegal exaction.[1] Our court of appeals affirmed the dismissal, *Parsons v. Preferred Family Healthcare, Inc.*, 2022 Ark. App. 277, 647 S.W.3d 120, and we granted Parsons's petition for review. When we grant a petition for

---

[1]As subpoints to the second point on appeal, Parsons argues that the circuit court mistakenly concluded (a) that the State of Arkansas received the benefit of its bargain with PFH, and (b) that the complaint did not allege wrongful state action.

review, we consider the appeal as though it had originally been filed in this court. *Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84, at 3, 569 S.W.3d 865, 868. We reverse and remand for further proceedings consistent with this opinion, and we vacate the court of appeals opinion.

On June 1, 2020, Parsons, on behalf of himself and all other similarly situated taxpayers, filed a complaint in the Benton County Circuit Court against Preferred Family Healthcare, Inc. (PFH), a Missouri corporation d/b/a (1) Health Resources of Arkansas, (2) Decision Point, (3) Dayspring Behavioral Health Services, and (4) Wilbur D. Mills Treatment Center. PFH is a provider of healthcare services that operates mental healthcare facilities and other medical services in Arkansas. Parsons, a resident of Benton County, Arkansas, and taxpayer of the State of Arkansas, alleged that a "public funds" illegal exaction had occurred. Specifically, he alleged that a significant portion of the $52,810,672 in funds PFH received from the State of Arkansas between 2010 and 2017 "were acquired using unlawful means and were utilized in a manner other than that represented by PFH." He alleged that PFH had engaged in a fraudulent scheme to illegally bill the state's Medicaid program, which is a "payor of last resort" for services and pays at a higher rate than Medicare. Parsons attached and incorporated an affidavit of probable cause for the arrest warrant of Helen M. Balding, PFH's billing director. The affidavit describes how Balding manipulated billing by entering false claims that were paid through Medicaid rather than Medicare. The fraudulent billing practices included PFH billing for services provided by employees who were not qualified to bill Medicare for the services. Parsons also alleged that PFH had bribed, sometimes through kickbacks from General Improvement Fund (GIF) grants, Arkansas legislators to conceal its fraudulent acts and to obtain taxpayer funds to which it would not otherwise be entitled. Parsons also attached and incorporated the

2

superseding indictment in *United States of America v. Bonteia Bernadette Goss, Tommy Ray Goss,*[2] *and Jeremy Young Hutchinson,*[3] Case No. 19-03048, Western District of Missouri; and a plea agreement in *United States of America v. Milton Russell Cranford*, Case No. 18-03020-01-CR-S-BCW, Western District of Missouri, in which Cranford, a registered lobbyist, pled guilty to federal program bribery.[4] Parsons alleged that the actions of PFH, in concert with Arkansas legislators acting in their official capacities, constituted an illegal exaction of Arkansas taxpayer funds. He sought judgment against PFH in the amount of the misused public funds acquired by PFH to be restored to the Arkansas state treasury, plus a reasonable attorney's fee from all sums recovered.

In response to the complaint, PFH filed a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. PFH argued that Parsons's complaint failed to state an illegal-exaction claim, reasoning that it did not assert any wrongdoing on the State's part because it did not allege that any State expenditure was illegal, misapplied, or arbitrary. PFH relied on *Bowerman v. Takeda Pharmaceuticals U.S.A.*, 2014 Ark. 388, 442 S.W.3d 839, in which this court answered questions certified by a federal court and held that no illegal-exaction claim had been stated in that products-liability and unfair-trade-practices case, which was based on the payment of State funds for an allegedly defective prescription drug. PFH further argued that to the extent that Parsons sought a refund of

---

[2]The Gosses were officers and directors of PFH.

[3]Hutchinson served as a senator in the Arkansas Senate from 2011 to 2018.

[4]The complaint states that exhibit 3 is a plea agreement in *United States of America v. Henry Wilkins IV*, Case No. 4:18CR186, Eastern District of Arkansas. However, it appears that a copy of the plea agreement between the United States and Milton Russell Cranford was mistakenly attached as both exhibit 3 and exhibit 4.

payments made under Medicare or Medicaid, the right and obligation to audit, review, and, if necessary, seek such refunds rests solely within the Arkansas Attorney General's (AG's) purview pursuant to the Medicaid Fraud False Claims Act. *See* Ark. Code Ann. §§ 20-77-901 et seq. (Repl. 2018 & Supp. 2021). It further argued that a "public funds" illegal-exaction case against private entities and individuals to seek a refund of payments made under Medicare or Medicaid is viable only if the AG or the Medicaid Inspector General fails to pursue civil- and administrative-enforcement actions. PFH argued that, in the instant case, the AG had discharged her statutory duties and entered into settlement agreements with PFH. Attached to the motion were two exhibits: (1) a settlement agreement between the State of Arkansas and PFH resolving "any potential civil or criminal claims against PFH being handled by the [Medicaid Fraud Control Unit]"; and (2) a settlement agreement between the United States of America,[5] the State of Arkansas (Arkansas Medicaid Program), PFH, and the relator who brought suit pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq., in *United States of America ex rel. Frances Smith v. Preferred Family Healthcare*, in the United States District Court for the Eastern District of Arkansas.

Parsons responded to the motion by arguing that (1) it was premature in that attaching exhibits had converted the motion to one for summary judgment as a matter of law (and Parsons had not had the opportunity to conduct discovery); (2) an illegal exaction occurs when the State does not receive "what is due"; (3) the complaint sufficiently alleges "state action"; and (4) the Attorney General's settlement is not a ground for dismissal.

---

[5]The United States of America acted through the United States Attorney's Office for the Eastern District of Arkansas; the United States Department of Health and Human Services, Office of Inspector General; and the United States Department of Veterans Affairs, Office of Inspector General.

The circuit court held a hearing and subsequently entered an order of dismissal with prejudice, as Parsons had filed a previous action attempting to assert a "public funds" illegal–exaction claim against the same defendants that was also dismissed pursuant to Rule 12(b)(6). The court expressly incorporated its findings from the bench, in which it stated in part:

> In this case, [PFH] did fraudulent billing. Services were of the grade and the quantity bargained for. Here, unlike in *Nelson* [*v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967)], or the allegation in *Nelson*, the State received what it bargained for. I think that is the distinguishing fact between *Nelson* and *Bowerman*, *Prince* [*v. Arkansas State Highway Commission*, 2019 Ark. 199, 576 S.W.3d 1]. *Bowerman* and *Prince* clearly require that the State have done something wrong. It did not. The GIF process was followed correctly, what it was. There's no question that the appropriation was appropriate.

In its written order, the court ruled that the complaint failed to state a claim for illegal exaction because Parsons did not allege any wrongdoing on the State's part as required by the ruling of this court in *Bowerman*, 2014 Ark. 388, 442 S.W.3d 839. This appeal followed.

First, we must address the appropriate standard of review. PFH filed its motion to dismiss pursuant to Arkansas Rule of Civil Procedure 12(b)(6) for failure to state facts upon which relief may be granted. Rule 12 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Here, the motion to dismiss included the settlement exhibits noted above. Although defense counsel stated at the hearing that it was unnecessary for the court to consider its exhibits and requested that the court ignore them, there is no indication in the record that the circuit court did, in fact, exclude them. Therefore, as required by our rules and precedent, we treat the motion as one for summary judgment. *See, e.g.*, *Koch v. Adams*, 2010 Ark. 131, 361 S.W.3d

5

817 (treating circuit court's grant of motion to dismiss as a grant of summary judgment where the court considered exhibits outside the pleadings).

On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 7, 422 S.W.3d 116, 120. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.*

A taxpayer's authority to file an illegal-exaction action is found in article 16, section 13 of the Arkansas Constitution, which provides:

> Any citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.

An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Stromwall v. Van Hoose*, 371 Ark. 267, 273, 265 S.W.3d 93, 98 (2007) (citing *Brewer v. Carter*, 365 Ark. 531, 231 S.W.3d 707 (2006)). In a "public funds" illegal-exaction case, such as the one before us, the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. *City of Jacksonville v. Smith*, 2018 Ark. 87, at 6, 540 S.W.3d 661, 666. Although the constitution speaks in terms of "any county, city or town," this court has long construed article 16, section 13 to allow suit for state-wide illegal exactions. *See Farrell v. Oliver*, 146 Ark. 599, 602, 226 S.W. 529, 530 (1921).

In the case at bar, Parsons argues in his first point on appeal that the circuit court incorrectly rendered factual findings contrary to the allegations in the complaint. Parsons points to the following factual findings in the court's order: "[s]ervices were of the grade and the

quantity bargained for," "the State received what it bargained for," and "the GIF process was followed correctly . . . [t]here's no question that the appropriation was appropriate." We agree that these findings were improper at this stage of the proceedings because the circuit court failed to view the evidence in the light most favorable to Parsons, the nonmoving party. It is axiomatic that summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006).

We now turn to Parsons's second point on appeal: that the circuit court erred in finding that the facts alleged in the complaint did not constitute an illegal exaction. Parsons contends that *Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967), is squarely on point. In *Nelson*, the plaintiff taxpayer appealed the dismissal of his illegal-exaction complaint, which alleged that the defendant oil companies had sold the highway department lower grades and quantities of asphalt than the State had paid for. The complaint asserted that the companies had unlawfully received more than $3 million of taxpayer money. There was no allegation of wrongdoing on the part of the State. This court's discussion included the following:

> Illegal Exaction under the Arkansas Constitution means both direct and indirect illegal exactions, thus comprehending any attempted invalid spending or expenditure by any government official.

> Illegal Exaction means far more than the mere collection of unlawfully levied taxes. With little limitation, almost any misuse or mishandling of public funds may be challenged by a taxpayer action. Even paying too much for cleaning public outhouses has been held by our courts as basis for a taxpayer's right to relief. Any arbitrary or unlawful action exacting taxes or tax revenues may be restrained and annulled by a taxpayer affected by such procedure.

*Nelson*, 242 Ark. at 277, 413 S.W.2d at 49 (internal citations and quotation marks omitted). This court reversed and remanded, concluding that the complaint had stated a cause of action for illegal exaction.

In *Bowerman, supra*, this court expressly distinguished *Nelson* because, in *Nelson*, the plaintiff alleged that the State overpaid for asphalt that was inferior to the grade of asphalt contracted by the State; in *Bowerman*, however, the State's reimbursements were for exactly the drug that was prescribed.[6]   The plaintiff in *Bowerman* failed to allege that the challenged expenditure was illegal, misapplied, or arbitrary.  *Bowerman*, 2014 Ark. 388, at 6, 442 S.W.3d at 843.

Another pertinent case is *Prince v. Arkansas State Highway Commission*, 2019 Ark. 199, 576 S.W.3d 1.  In *Prince*, the plaintiff taxpayers sued the Arkansas Department of Transportation and its director, in his official capacity, asserting a claim for illegal exaction based on an agreement between the Department and United States Fish and Wildlife Services (USFWS) concerning a bridge construction as part of the realignment and expansion of Highway 79.  In determining that the plaintiffs had not stated a claim for illegal exaction, we discussed the fact that the lawsuit sought declaratory and injunctive relief to prevent the Department's exercise of its legal power to enter into an agreement with USFWS.  Unsurprisingly, because the defendant was a State entity, we focused on whether the allegations included that it had acted wrongfully. As in *Bowerman*, we distinguished—rather than overruled—*Nelson*.

We reject PFH's narrow reading of the taxpayers' constitutional right to file suit for illegal exaction.  *Nelson* has not been overruled.  Thus, *Nelson* and the cases on which it relies

---

[6]The fact that *Nelson* was not overruled in *Bowerman* is further evidenced by the three-justice opinion concurring in part and dissenting in part, which would have overruled *Nelson*.

remain good law.  Accordingly, a plaintiff is not required to allege wrongful State action in every case in order to state a claim for a "public funds" illegal exaction. At this point in the present case, issues of material fact remain.  Accordingly, we reverse and remand for further proceedings consistent with this opinion.  Because we reverse for the reasons stated above, we need not address Parsons's argument that the circuit court mistakenly concluded the complaint did not allege wrongful State action.

Reversed and remanded; court of appeals opinion vacated.

*Bishop Law Firm*, by: *Matt Bishop*; and *Howerton Law Firm*, by: *Wendy R. Howerton*, for appellant.


*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *David R. Matthews* and *Sarah L. Waddoups*, for appellee.