SLIP OPINION

Cite as 2015 Ark. 29

# SUPREME COURT OF ARKANSAS

No. CV–14–581

| | |
|---|---|
| BRYAN SULLINS, KERRI SULLINS, AND CHARLES E. WILLIAMS, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED<br><br>APPELLANTS | **Opinion Delivered** January 29, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-13-755] |
| V. | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| CENTRAL ARKANSAS WATER, BUDDY VILLINES, PULASKI COUNTY JUDGE, AND PULASKI COUNTY, ARKANSAS<br><br>APPELLEES | <u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

This case is an appeal of the Pulaski County Circuit Court's grant of summary judgment in favor of appellees Central Arkansas Water, Buddy Villines, and Pulaski County against appellants, Bryan Sullins, Kerri Sullins and Charles Williams. Before the circuit court, appellants brought an illegal-exaction claim against appellees, arguing that Pulaski County and Central Arkansas Water had entered into an improper agreement and that as a result, Central Arkansas Water is improperly paying public funds to Pulaski County. We hold that the agreement is a proper exercise of authority under the law and affirm the circuit court.

Appellants Bryan Sullins, Kerri Sullins, and Charles Williams filed suit against appellees Pulaski County, Central Arkansas Water, and Buddy Villines in his capacity as Pulaski County Judge, claiming that appellees had entered into an agreement which necessitated

SLIP OPINION

Central Arkansas Water to expend public funds illegally. The facts underlying the illegal-exaction claim are as follows. Central Arkansas Water owns and operates Lake Maumelle as a public water supply. Lake Maumelle is located in Pulaski County. In 2007, Central Arkansas Water adopted a Watershed Management Plan, which recommended certain management options for the protection of the Lake Maumelle watershed. One of the management options the plan suggested was the implementation through the county governments of land-use controls for the watershed. Pulaski County supported the idea of subdivision regulations that would implement development controls for the areas of the watershed within Pulaski County.

In February 2009, Central Arkansas Water authorized the collection of a "watershed fee" imposed on wholesale customers, including appellants. In April 2009, Pulaski County and Central Arkansas Water entered into the Watershed Protection Agreement at issue in this case. The Central Arkansas Water Board of Directors approved the agreement and the Pulaski County Quorum Court enacted Ordinance 09-OR-26, which authorized the county judge to execute the agreement. At the same meeting, the quorum court adopted a Subdivision Ordinance, including Chapter 8, which provides special provisions applicable to the Pulaski County portion of the Lake Maumelle Watershed.

In the complaint, appellants alleged that they and other similarly situated taxpayers had paid the watershed fee imposed by Central Arkansas Water and that it constituted an illegal exaction because the Watershed Protection Agreement between Central Arkansas Water and Pulaski County was illegal. Specifically, appellants argued that the Watershed Protection

Agreement was improper because it was a contract for the "joint exercise of governmental powers, privileges and authority" pursuant to the Interlocal Cooperation Act, codified at Arkansas Code Annotated section 25-20-104 (Repl. 2014), and because it failed to comply with the applicable statutory terms. In response, appellees contended that the agreement was proper under the Interlocal Agreement Act, codified at Arkansas Code Annotated section 14-14-910 (Repl. 2013) because it was an agreement for administrative services. The parties filed cross-motions for summary judgment, and the circuit court ruled that the agreement was a proper contract for administrative services. Accordingly, the circuit court entered summary judgment in favor of appellees, and appellants filed this appeal.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Gentry v. Robinson*, 2009 Ark. 634, 361 S.W.3d 788. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Lipsey v. Giles*, 2014 Ark. 309, 439 S.W.3d 13. The burden is not on the moving party to demonstrate that every fact is undisputed, but to show that reasonable minds could not differ as to the conclusion to be drawn from them. *Early v. Crockett*, 2014 Ark. 278, 436 S.W.3d 141. Summary judgment is also appropriate when the circuit court finds that the allegations, taken as true, fail to state a cause of action. *Cottrell v. Cottrell*, 332 Ark. 352, 965 S.W.2d 129 (1998). When parties file cross-motions for summary

SLIP OPINION

judgment, as in this case, we determine on review whether the appellee was entitled to judgment as a matter of law. *Rylwell, LLC v. Men Holdings 2, LLC*, 2014 Ark. 522, ___ S.W.3d ___.

Illegal-exaction lawsuits in Arkansas are authorized under article 16, section 13, of the Arkansas Constitution, which provides, "Any citizen of any county, city, or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Brewer v. Carter*, 365 Ark. 531, 231 S.W.3d 707 (2006). Two types of illegal-exaction cases can arise under article 16, section 13: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *McGhee v. Ark. State Bd. of Collection Agencies*, 360 Ark. 363, 201 S.W.3d 375 (2005). This court has stated that citizens have standing to bring a "public funds" case because they have a vested interest in ensuring that the tax money they have contributed to a state or local government treasury is lawfully spent. *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). Accordingly, "a misapplication by a public official of funds arising from taxation constitutes an exaction from the taxpayers and empowers any citizen to maintain a suit to prevent such misapplication of funds." *Farrell v. Oliver*, 146 Ark. 599, 602, 226 S.W. 529, 530 (1921). First, and foremost, an illegal exaction is an exaction that is either not authorized by law or is contrary to law. *Stromwall v. Van Hoose*,

371 Ark. 267, 265 S.W.3d 93 (2007). Where the expenditure is authorized by statute, no illegal exaction occurs. *Id.*

Appellants' first argument is that the circuit court erred in ruling that the Watershed Protection Agreement was a proper contractual agreement between Pulaski County and Central Arkansas Water. Appellants argue that, in entering into the agreement, the parties were required to comply with the terms of the Interlocal Cooperation Act, codified at Arkansas Code Annotated sections 25-20-101 et seq., which provides in relevant part,

> Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law and jointly with any public agency of any other state of the United States which has the same powers, privileges, or authority, but only to the extent that laws of the other state or of the United States permit the joint exercise or enjoyment

Ark. Code Ann. § 25-20-104. Appellants assert that the Watershed Agreement Act is governed by the Interlocal Cooperation Act because it is an agreement for "governmental powers, privileges, or authority." In support of their contention, appellants point to several sections of the agreement. First, appellants point to section 2.02 of the agreement, which states:

> **Section 2.02 Staff**. Pulaski County will hire adequate staff within the Planning Department to perform its obligations under this Agreement (the "Staff"). A preliminary list of the Staff contemplated by the Parties under this Agreement is attached hereto as Schedule I and incorporated herein by this reference. The Staff will be dedicated primarily to the implementation and enforcement of Chapter 8 and the Stormwater Management Ordinance within the Pulaski County Watershed. The Parties contemplate that Pulaski County will not need to immediately hire all of the Staff listed in Schedule I. Accordingly, CAW will initially fund that amount necessary to hire and provide equipment and administrative support for the Watershed Inspector.

Thereafter, as needed from time to time, in October of each year, Pulaski County will notify CAW of the county's intent to fill any or all of the remaining positions set forth on Schedule I, including an estimate of when the funding for each position will be required. The Parties will work together to assure that the Staff remains adequate to perform its obligations relating to the protection of the Pulaski County Watershed.

Next, appellants rely on section 3.03 which provides:

**Section 3.03 Affirmative Covenant**. Throughout the term of this Agreement, CAW covenants and agrees that it will take each and every action reasonably required of it to ensure that it fulfills its obligations to Pulaski County under this Agreement and to assist Pulaski County with the implementation and enforcement of Chapter 8 and the Stormwater Management Ordinance as contemplated hereby.

Additionally, appellants point to section 4.05, wherein Pulaski County designates Central Arkansas Water as a Responsible Management Entity ("RME") for certain purposes relating to the wastewater system. Specifically, Section 4.05 provides,

**Section 4.05 Responsible Management Entity**. CAW is not authorized by law to operate and/or maintain wastewater systems. Nevertheless, CAW does have adequate engineering experience and expertise to provide advice concerning the design and installation of wastewater systems. Accordingly, until such time as the Little Rock Wastewater Utility is designated by Pulaski County to serve as the Responsible Management Entity ("RME"), or such alternative entity acceptable to CAW is appointed as the RME, the Parties agree as follows:
  (i)     CAW is designated as an RME for the purpose of approving any Force Line System or On Site System as contemplated by Section 8.2A1 of Chapter 8;
  (ii)    CAW is designated as an RME for the purpose of approving any Wastewater System Maintenance Plan as contemplated by Section 8.2A2 of Chapter 8; and
  (iii)   CAW is designated as an RME for the proposed enforcing the Wastewater System Maintenance Plan, if necessary, and charging the Developer, POA, or Lot Owner as contemplated by Section 8.2C of Chapter 8.

Finally, appellants cite to section 4.06, wherein Pulaski County designates Central Arkansas Water as its authorized representative and authorizes Central Arkansas Water to "take any and all actions permitted by law it deems necessary to ensure continued compliance with any covenants and conditions contained in any agreement." Appellants insist that because Pulaski County and Central Arkansas Water do not have "the same powers, privileges, or authority under the law" they are prohibited by the Interlocal Cooperation Act from entering into this agreement. Furthermore, appellants contend that through these sections of the contract, Pulaski County improperly delegates its responsibility for implementation and enforcement of land-use controls to Central Arkansas Water.

Appellees do not dispute that Central Arkansas Water and Pulaski County do not have the same powers but submit that the agreement is valid under the general contracting powers granted to the counties under amendment 55 to the Arkansas Constitution, as well as the Interlocal Agreement Act, codified at Arkansas Code Annotated section 14-14-910. The Interlocal Agreement Act provides,

> The county court of each county may contract, cooperate, or join with any one (1) or more other governments or public agencies, including any other county, or with any political subdivisions of the state or any other states, or their political subdivisions, or with the United States to perform any administrative service, activity, or undertaking which any contracting party is authorized by law to perform.

Ark. Code Ann. § 14-14-910(a). Appellees argue that the Watershed Protection Agreement is an agreement for administrative services, activities or undertakings pursuant to section 14-14-910 and not an agreement for governmental powers, privileges, or authority under section 25-20-104.

SLIP OPINION

Having considered the parties' arguments, we hold that the circuit court correctly ruled that the Watershed Protection Agreement was a valid agreement under Arkansas law. The Interlocal Agreement Act expressly provides authority for a county to contract for "any administrative service, activity, or undertaking." Ark. Code Ann. § 14-14-910(a). This court has distinguished between a county's legislative and administrative authority and held that enforcement of an already-established ordinance is an exercise of administrative authority. *City of Ft. Smith v. McCutchen*, 372 Ark. 541, 279 S.W.3d 78 (2008). Accordingly, as the Arkansas Court of Appeals has summarized, "the enactment and amendment of local zoning is legislative and the sole, nondelegable duty of the local governing body. In contrast, the execution and enforcement of the zoning laws are administrative tasks and hence, delegable." *Bolen v. Washington Cnty. Zoning Bd. of Adjustments*, 2011 Ark. App. 319, at 7, 384 S.W.3d 33, 38 (2011) (citing *City of Ft. Smith v. McCutchen*, *supra*).

In this case, the agreement between Central Arkansas Water and Pulaski County provides for the execution and enforcement of a previously enacted zoning ordinance and thus covers only administrative tasks. For example, section 2.02 provides that the duties of the staff will be "<u>implementation and enforcement</u> of Chapter 8 and the Stormwater Management Ordinance within the Pulaski County Watershed." Furthermore, the section makes clear that the staff will be hired and employed by Pulaski County and not by Central Arkansas Water. Instead, Central Arkansas Water reimburses Pulaski County only for the cost of the staff. Similarly, section 3.03, which states that Central Arkansas Water will "assist Pulaski County with the <u>implementation and enforcement</u> of Chapter 8 and the Stormwater

Management Ordinance as contemplated hereby" does not enact new policy, but simply provides for the enforcement of the existing ordinance.

Moreover, section 4.05, designating Central Arkansas Water as a Responsible Management Entity is also not an improper delegation of authority. Although appellants argue this section grants broad powers to Central Arkansas Water over the wastewater management system, the agreement actually limits Central Arkansas Water's powers to (1) approval of any Force Line System or On Site System, and (2) approval and enforcement of any Wastewater System Maintenance Plan Section. Contrary to appellants' assertions, the agreement does not place the entire wastewater system under the control or authority of Central Arkansas Water; rather, it allows Central Arkansas Water to advise Pulaski County in its decisions. Thus, because the provisions of the contract do not delegate rulemaking or policy-making powers to Central Arkansas Water but instead relate only to administrative actions, such as implementation and enforcement of the ordinance previously passed by Pulaski County, the circuit court did not err in ruling that the agreement was administrative.

Additionally, we reject appellants' argument that the Interlocal Agreement Act requires Central Arkansas Water to possess the independent legal authority to perform the services under the contract. Section 14-14-910 provides that counties may contract with public agencies "to perform any administrative service, activity, or undertaking *which any contracting party is authorized by law to perform.*" Ark. Code Ann. § 14-14-910(a) (emphasis added). Clearly, the plain language of this section contemplates that counties may contract for any administrative service as long as either the county or the public agency is legally authorized

to perform it. In this case, appellants do not claim that there is any portion of the agreement which neither Pulaski County nor Central Arkansas Water is authorized by law to perform. Additionally, the statute expressly authorizes counties to "cooperate in the exercise of any function, power, or responsibility; share the services of any officer, department, board, employee, or facility; and transfer or delegate any function, power, responsibility, or duty." Ark. Code Ann. § 14-14-910(b)(2). The plain language of this section contemplates that counties may delegate administrative powers to other public agencies under the provisions of this section.

Finally, appellants argue that section 14-14-910 is not applicable because Pulaski County has not obligated its own financial resources in the agreement. However, section 2.02 expressly mandates that "Pulaski County will hire adequate staff within the Planning Department to perform its obligations under this Agreement." As appellants recognize in their brief, this provision will require Pulaski County to pay for such expenses as the salaries of the staff, employee benefits and payroll taxes, registration fees, and training. Appellants also admit that these costs will initially be paid from the general-tax revenues of Pulaski County before Central Arkansas Water reimburses the county for them. As the agreement requires Pulaski County to expend money from its general tax revenues in executing the agreement, the contract implicates the financial resources of the county. Additionally, it is undisputed that the actual enforcement of the agreement will, at times, involve existing members of the Pulaski County staff beyond those for which Central Arkansas Water is reimbursing Pulaski County. Those additional staff members are already being paid through Pulaski County

financial resources, so the use of those staff members will also implicate the financial resources of Pulaski County.

Because the agreement is for administrative activities that either Pulaski County or Central Arkansas Water is legally authorized to perform and Pulaski County's financial resources are obligated in the agreement, the circuit court properly concluded that the agreement was governed and authorized by Arkansas Code Annotated section 14–14–910. Accordingly, because the contract between Pulaski County and Central Arkansas Water is authorized by the Interlocal Agreement Act, the expenditure of funds under the contract is not an illegal exaction, and the circuit court properly granted summary judgment against appellants.

Affirmed.

*Campbell Law Firm*, by: *H. Gregory Campbell*, for appellants.

*Amanda Mankin-Mitchell* and *Chastity Scifres*, Pulaski County Attorney's Office, for appellees.