2016 Ark. 75

James MCCAFFERTY, Appellant,

v.

The OXFORD AMERICAN LITERARY PROJECT, INC., Appellee.

No. CV–15–264

Supreme Court of Arkansas.

Opinion Delivered: February 25, 2016

Rehearing Denied March 31, 2016

G. Ben Bancroft, P.A., Hot Springs, by: G. Ben Bancroft, for appellant.

Wright, Lindsey & Jennings LLP, Little Rock, by: Kyle R. Wilson and Michael A. Thompson, for appellee.

COURTNEY HUDSON GOODSON, Associate Justice

Appellant James McCafferty appeals the circuit court's grant of summary judgment on his illegal-exaction claim against appellee The Oxford American Literary Project. Inc. ("Oxford American"). McCafferty's suit arises from a loan made to Oxford American from the University of Central Arkansas ("UCA") out of its cash funds. The circuit court found that McCafferty's illegal-exaction claim failed as a matter of law because the funds at

issue were not derived from taxes. We agree and affirm the circuit court.

McCafferty filed an illegal-exaction lawsuit against Oxford American asserting that UCA loaned $700,000 to Oxford American out of its cash funds and that the loan was an improper use of public funds. Oxford American filed a motion for summary judgment, arguing that the cash funds at issue were not generated by taxes and could not support a claim for illegal exaction. In support of its motion, Oxford American attached an affidavit from Diane Newton, the vice president of Finance and Administration for UCA, who averred that the funds at issue were drawn from UCA's Board of Trustees Fund and its |₂auxiliary funds, which were "comprised of money from profits UCA has earned from housing, bookstore, food-services, and other auxiliary operation" as well as investment income. Newton also averred that no money at issue came from any appropriations authorized by the General Assembly. McCafferty responded that he was not required to prove that the money came directly from taxes to prevail on his illegal-exaction claim. Rather, he argued that the illegal-exaction lawsuit was appropriate because the money was public money that was generated from the assets of a tax-supported public institution. The circuit court held a hearing on the issue. During the hearing, McCafferty conceded that the issue before the court was an issue of law, and he did not identify any disputed issues of material fact. McCafferty also did not challenge that the funds at issue were "cash funds" but instead argued that cash funds were public funds that supported an illegal-exaction lawsuit. The circuit court granted Oxford American's motion for summary judgment, concluding that the funds were not subject to an illegal-exaction suit because they were not funds derived from taxes. McCafferty has filed this appeal.

The only issue for this court to decide is whether McCafferty can maintain an illegal-exaction lawsuit to challenge an allegedly improper expenditure from UCA's "cash fund." Illegal-exaction lawsuits in Arkansas are authorized under article 16, section 13 of the Arkansas Constitution which provides, "Any citizen of any county, city, or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Brewer v. Carter*, 365 Ark. 531, 231 S.W.3d 707 (2006). Two types of illegal-exaction cases can arise under article |₃16, section 13: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *Sullins v. Cent. Ark. Water*, 2015 Ark. 29, 454 S.W.3d 727. The parties agree that the instant case is a "public funds" case rather than an "illegal-tax" case. It is axiomatic that, before a public-funds type of illegal-exaction case will be allowed to proceed, there must be facts showing that monies generated from tax dollars or arising from taxation are being misapplied or illegally spent. *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377.

The circuit court dismissed McCafferty's illegal-exaction claim as not involving public funds generated from tax dollars, citing our decision in *Gipson v. Ingram*, 215 Ark. 812, 223 S.W.2d 595 (1949). In that case, we held that funds "derived from such sources as students' fees, sale of farm produce, dormitory charges, etc." were not derived from taxes. *Id.* at 816, 223 S.W.2d at 597. Although *Gipson* did not involve a

claim for illegal exaction, we have subsequently confirmed that the type of funds at issue in *Gipson* are not sufficient to support a claim for illegal exaction because they are not derived from taxes. *See Chapman v. Bevilacqua*, 344 Ark. 262, 271, 42 S.W.3d 378, 384 (2001) ("As this court noted in *Gipson v. Ingram*, 215 Ark. 812, 223 S.W.2d 595 (1949), a governmental subdivision use of funds not derived from state taxpayer monies is not subject to a challenge for unlawful disbursement."); *Mackey v. McDonald*, 255 Ark. 978, 504 S.W.2d 726 (1974) (noting that the funds at issue in *Gipson* could not support an illegal-exaction claim because the funds were not derived from taxes and did not reach the state treasury).

McCafferty argues that the circuit court erred because the funds at issue are public funds arising out of the operation of a tax-supported public institution. In support of his argument, he cites cases designating the cash funds of public institutions as "public monies." *See, e.g., Sebastian Cty. Chapt. American Red Cross v. Weatherford*, 311 Ark. 656, 846 S.W.2d 641 (1993); *Parker v. Ark. Real Estate Comm'n*, 256 Ark. 149, 506 S.W.2d 125 (1974). However, these cases do not indicate that a fund merely qualifying as "public money" or a "public fund" is sufficient to support an illegal-exaction claim. Rather, these cases denote that cash funds and public monies are subject to some governmental regulation and oversight even though they are not comprised of tax-generated dollars.[1] For example, at issue in *Parker* was a pension plan established by the Arkansas Real Estate Commission.

The Commission argued that the plaintiff had no right to any funds from the plan because the Commission had created the plan without proper statutory authority and was void ab initio. The plaintiffs argued that the pension plan was valid because it was formed out of the cash funds of the Commission, which were not deposited with the general treasury, and accordingly, the Commission could utilize the funds in whatever way it chose. In ruling for the Commission, this court held that the cash funds were "public monies" and that the Commission was constrained in its expenditures of such money by statute. Notably, however, *Parker* did not involve a claim for illegal exaction, and the fact that the legislature can place restrictions on the spending of cash funds does not mean that such funds are "public funds generated from tax dollars," as required for an illegal-exaction lawsuit.

McCafferty further argues that the funds at issue arose from taxation because they were the result of the operation of a tax-supported institution. Under McCafferty's theory, the funds at issue would not have been possible but for the fact that UCA received tax dollars and, accordingly, the funds should be considered as "arising from" taxes. We disagree. Although this court has used various terms in defining the type of public funds necessary to support an illegal-exaction lawsuit such as "generated from tax dollars," "derived from taxes," and "arising from taxation," we have consistently required that the funds at issue come from taxes or implicate the state or local trea-

---

1. Indeed, following our decision in *Gipson*, the legislature passed a law requiring expenditures from cash funds to be approved by the legislature, *see* Ark.Code Ann. § 19-4-802 (Repl. 2007), but this law does not affect the legal analysis in this case because it does not change the fact that the cash funds at issue were not derived from taxes. In fact, the statute makes clear that "cash funds" of a state institution are those funds that "are not on deposit with or in the trust of the Treasurer of State." Ark.Code Ann. § 19-4-801 (Supp. 2015).

sury.[2] *See Mackey v. McDonald*, 255 Ark. at 983, 504 S.W.2d at 731 (distinguishing *Gipson, supra*, by stating, "It is also significant that in *Gipson*, none of the funds ever reached the public treasury"); *Fort Smith Sch. Dist. v. Beebe*, 2009 Ark. 333, at 6, 322 S.W.3d 1, 4 (stating, "This is a public funds case, and to prevail on their claim, Appellants must show that the State misapplied or illegally spent money that was lawfully collected pursuant to ad valorem property taxes"). This is because a citizen's standing to bring a public-funds case is tied to his vested interest in ensuring that the tax money he has contributed to a state or local government treasury is lawfully spent. *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). Accordingly, "a misapplication by a public official of funds arising from taxation constitutes an exaction from the taxpayers and empowers any citizen to maintain a suit to prevent such misapplication of funds." *Farrell v. Oliver*, 146 Ark. 599, 602, 226 S.W. 529, 530 (1921). Such a rationale does not extend to this case, however, where the parties agree that the funds at issue did not come from the state treasury and that taxpayers are not required to replenish funds from UCA's cash funds. *See, e.g. Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001) (holding that a plaintiff did not have standing to challenge the expenditure of federal funds because the funds were strictly derived from federal taxes, were not comingled with funds from the state treasury, and the plaintiff did not have an obligation to replenish any improperly-spent funds).

Our case law has consistently required that the funds at issue in an illegal-exaction lawsuit implicate the state or local treasury and not merely be traceable to the general treasury through a "but-for"

analysis. Indeed, we have rejected illegal-exaction suits under such circumstances in at least three previous cases. First, in *Brewer, supra*, the plaintiff attempted to bring an illegal-exaction lawsuit for the alleged misspending of insurance proceeds following the destruction of a county building. Although the building at issue belonged to the county and the insurance proceeds were paid to the county, we held that the plaintiff lacked standing because the funds were not generated or arising from taxation. Second, in *Dockery, supra*, the plaintiff brought an illegal-exaction lawsuit challenging funds derived from certain gas leases for mineral exploration on land belonging to the Arkansas Game and Fish Commission. Despite the fact that the leases were on Commission land, we held that the money generated from those leases was not subject to an illegal-exaction lawsuit because it did not arise from taxation. Finally, in *McGhee v. Arkansas State Board of Collection Agencies*, 368 Ark. 60, 243 S.W.3d 278 (2006), the plaintiffs brought an illegal-exaction claim against the Arkansas State Board of Collection Agencies, arguing that the board was improperly licensing payday lenders. To support their illegal-exaction claim, the plaintiffs argued that the monies received by the board were public funds and that the board had two full-time employees receiving salaries and benefits. On appeal, this court affirmed the circuit court's grant of summary judgment in favor of the board, holding that it had demonstrated that the funds at issue could not support an illegal-exaction claim because the board introduced unrefuted evidence that it did not receive revenue from the state treasuries and that the funds at issue were not generated from tax dollars. Additionally, the board averred that no tax revenue was

---

**2.** Contrary to the concurring opinion's suggestion, we have never held, and we do not

hold today that only direct appropriations are subject to challenge in an illegal-exaction suit.

used to pay for employee benefits of board employees. Thus, in *Brewer, Dockery,* and *McGhee,* we rejected the notion that funds could arise from taxation merely because they existed as a byproduct of tax funds.[3]

In this case, the circuit court properly granted summary judgment against McCafferty because the undisputed facts show that the cash funds at issue were not generated or arising from taxation. On this point, Oxford American introduced an affidavit from Diane |₈Newton, who averred that the funds were not appropriated by the legislature but instead were made up of "money from profits UCA has earned from housing, bookstore, food-services, and other auxiliary operations", as well as investment income. McCafferty presented no proof in response to this affidavit and did not challenge its factual accuracy. Additionally, as was the case in *Brewer, Dockery,* and *McGhee,* the fact that the funds may have been generated as a byproduct of facilities supported by tax dollars is not sufficient to support a claim for illegal exaction.

Finally, McCafferty argues on appeal that our decision in *Gipson* supports his illegal-exaction claim because that case implicitly recognized that a citizen has legal recourse for the alleged improper spending of cash funds. We disagree. In *Gipson,* the plaintiff argued that various state institutions were improperly using their cash funds to supplement the salary of paid employees, so that the employees were receiving compensation in excess of the amount fixed by the legislature. The plaintiff sought an injunction prohibiting

the defendants from using the cash funds in this way. This court held that the use of cash funds to increase a salary fixed by the legislature was illegal, and a state institution using the funds in such a way could be enjoined. *Id.* In the instant case, however, McCafferty does not seek an injunction; rather, he seeks money damages under a claim of illegal exaction. As indicated above, a claim for illegal exaction specifically requires that the funds at issue be generated or arise from taxation. As we clearly held in *Gipson,* cash funds do not meet this definition.

|₉Because the cash funds at issue in this case were not generated or arising from taxation, the circuit court properly granted summary judgment in favor of Oxford American, and accordingly, we affirm that decision.

Affirmed.

Hart, J., concurs.

Brill, C.J., and Baker and Wynne, JJ., dissent.

Josephine Linker Hart, Justice, concurring.

I agree that we should affirm the dismissal of Mr. McCafferty's lawsuit, but my reasoning is different from the majority's. I believe, as a general principle, that Mr. McCafferty had the authority as a citizen and a taxpayer to challenge unlawful use of public money. His lawsuit was not sustainable because of the relief that he sought and the party from whom he sought relief.

---

**3.** We reject the dissent's suggestion that we should overrule these cases. This court has held that it is necessary, as a matter of public policy, to uphold prior decisions unless great injury or injustice would result. *Cochran v. Bentley,* 369 Ark. 159, 251 S.W.3d 253 (2007). The policy behind stare decisis is to lend predictability and stability to the law. *Id.*

Accordingly, we will not overrule a prior decision absent a showing that "it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Union Pac. R.R. Co. v. Barber,* 356 Ark. 268, 288, 149 S.W.3d 325, 337 (2004). No such showing has been made here.

In his complaint, Mr. McCafferty asserted that Oxford American received an "ultra vires transfer of UCA funds" and prayed that $700,000 be paid by Oxford American "to the State Treasurer." The requested remedy ignored the fact that the funds in question did not originate from the State Treasury. Accordingly, the case before us is analogous to *Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378 (2001).

In *Chapman* this court affirmed the grant of summary judgment that resulted in the dismissal of a public-funds lawsuit on a slightly different basis than found by the circuit court. Chapman sued homeowners whose dwellings had been refurbished through a federal program that was administered by the city of Fort Smith. *Id.* She sought to have the money placed in the city's general fund, despite the fact that it did not originate there. *Id.* The funds had always been administered separately and never commingled. Accordingly, this court held that Chapman did not have standing as a taxpayer to recover the funds for the city's general fund. *Id.* Nonetheless, this court held that even though Chapman had no standing as a taxpayer to reach the funds that had been dispersed, he did have standing to challenge the misuse of the public funds that could be traced to paying the salaries of the municipal employees who he alleged were dispersing the federal funds. *Id.*

A taxpayer has the right to maintain a cause of action for an illegal exaction in a public-funds case based on the theory that he or she is the equitable owner of the funds in question. *Farrell v. Oliver*, 146 Ark. 599, 226 S.W. 529 (1921). In his complaint, Mr. McCafferty averred only that he was a resident of Garland County, Arkansas, and a taxpayer to the State of Arkansas. It is not disputed that the cash funds at issue did not originate from the State Treasury. Therefore, Mr. McCafferty, like Chapman, did not have standing to act on behalf of similarly situated taxpayers who likewise had no authority to "protect" against the expenditure solely in their capacity as taxpayers. *Id.* While I decline to speculate as to who may have an equitable interest in the public funds in question, it is clear that Mr. McCafferty does not. In my view, it is necessary to make this distinction; otherwise, our opinion today could be seen as a bright-line rule that citizens are limited to only being able to challenge direct appropriations under article 16, section 13 of the Arkansas Constitution.

Furthermore, because this is not a simple case involving misuse of tax money, Mr. McCafferty's lawsuit should also been dismissed due to his failure to join necessary parties under Rule 19 of the Arkansas Rules of Civil Procedure. Mr. McCafferty did not allege that Oxford American did anything illegal with the funds that it received from UCA or even that the money was not well spent. *Cf. Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967). Accordingly, at a minimum, the Board of Trustees of UCA were necessary parties.

Finally, I wish to dispel the notion that our decision today leaves citizens without a remedy when public officials misuse public money. This court has stated,

There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, or which constitute a violation of their official duty, whenever the execution of such acts would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in eq-

uity, and for the protection of which we would have no adequate remedy at law. *Wilson v. Pulaski Ass'n of Classroom Teachers,* 330 Ark. 298, 302, 954 S.W.2d 221, 224 (1997) (quoting *Jensen v. Radio Broad. Co., Inc.,* 208 Ark. 517, 520, 186 S.W.2d 931, 932 (1945)). Contrary to Mr. McCafferty's assertions, this remedy has been consistently recognized by the courts of this state. *See Gipson v. Ingram,* 215 Ark. 812, 223 S.W.2d 595 (1949).

I concur.

Robin F. Wynne, Justice, dissenting.

The sole issue on appeal is whether the plaintiff-appellant, James McCafferty, has standing as a taxpayer to pursue an illegal-exaction claim for alleged misuse of admittedly public funds by the University of Central Arkansas. The majority holds that the funds at issue were not generated or arising from taxation because they do not directly implicate the state or local treasury. As explained below, I would hold that the appellant does have standing in this case and reverse and remand to the circuit court. Therefore, I respectfully dissent.

Article 16, section 13 of the Arkansas Constitution grants the citizens of Arkansas standing to pursue an illegal-exaction claim. This section provides that "[a]ny citizen of any county, city, or town may institute suit on behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions." Here, the parties agree that this is a "public funds" illegal-exaction case. This court has stated that "a misapplication by a public official of funds arising from taxation constitutes an exaction from the tax payers and empowers any citizen to maintain a suit to prevent such misapplication of funds." *Brewer v. Carter,* 365 Ark. 531, 534, 231 S.W.3d 707, 709 (2006) (citing *Farrell v. Oliver,*

146 Ark. 599, 602, 226 S.W. 529, 530 (1921)). The public funds at issue in this case are a $700,000 "loan" from UCA to appellee, The Oxford American Literary Project, Inc. According to the affidavit of UCA's Vice President for Finance and Administration, those funds came from the university's auxiliary funds, which are comprised of profits from housing, bookstore, food services, and other auxiliary operations, and the Board of Trustees Fund, which is comprised of money from investment income, bookstore profits, and other auxiliary operations. Notably, the appellee does not contend that the funds came from outside sources separate and apart from the State, such as an endowment from a private individual or a grant from the federal government for a specific purpose. I agree that such funds do not "arise from taxation" and would not be subject to a taxpayer suit for illegal exaction. *E.g., Chapman v. Bevilacqua,* 344 Ark. 262, 42 S.W.3d 378 (2001) (plaintiff did not have standing to sue for the disbursement of strictly federal funds by the City of Fort Smith, which were never commingled with the City's general fund).

As the plaintiff in this case, it was incumbent upon appellant McCafferty to demonstrate his standing to bring an illegal-exaction claim. *See Brewer, supra.* Under our case law, this requires a showing that the funds at issue were generated from tax dollars or otherwise arose from taxation. *Id.* (citing *W. Foods, Inc. v. Weiss,* 338 Ark. 140, 992 S.W.2d 100 (1999)). The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *Ark. Hotels & Entm't, Inc. v. Martin,* 2012 Ark. 335, at 4, 423 S.W.3d 49, 52 (citing *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.,* 366 Ark. 480, 237 S.W.3d 32 (2006)).

In *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999), this court stated the following:

> We have explained that citizens have standing to bring a public-funds case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. *Nelson v. Berry Petroleum, Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967); *Green v. Jones*, 164 Ark. 118, 261 S.W. 43 (1924). Thus, the only standing requirements we have imposed in public-funds cases is that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. *See Nelson, supra; Green, supra.* We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor have we required the plaintiff to establish a significant tax contribution to the state treasury. Hence, in public-funds cases we have given the word "interested" as used in Article 16, Section 13, a very broad construction.

338 Ark. at 16, 991 S.W.2d at 539. Similarly, in *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992), this court wrote, "We have given this type of exaction[, a public funds exaction case,] an expansive interpretation because taxpayers are the equitable owners of all funds collected by a government and, in most of the cases, are liable to replenish the funds exhausted by a misapplication or wrongful payment. Under these conditions taxpayers are entitled to broad relief." In recent years, this court has strayed from the broad relief that should be afforded taxpayers. As noted by the majority, we do have the power to overrule previous decisions; however, it is necessary as a matter of public policy to uphold prior decisions unless great injury or injustice would result. *See Union Pac.*

*R.R. Co. v. Barber*, 356 Ark. 268, 287, 149 S.W.3d 325, 337 (2004). Just such an injury or injustice would result from the majority's narrow reading of our case law defining what is "arising" from taxation. Importantly, the issue in this appeal is standing, not the merits of the case, and I firmly believe that allowing the alleged misspending of these cash funds to go unchallenged by the taxpayers would be a great injustice. Thus, I would overrule those decisions cited by the majority to the extent that they require direct appropriations from the General Assembly be at stake for taxpayer standing in an illegal-exaction case. *See Fields v. S. Farm Bureau Cas. Ins. Co.*, 350 Ark. 75, 87, 87 S.W.3d 224, 231 (2002) ("[W]e have made it clear that we will not blindly follow precedent where that precedent no longer gives a just result.").

Giving the proper broad construction to the concept of public funds that were "generated from tax dollars or otherwise arose from taxation," I believe that the funds at issue did arise from taxation. As argued by appellant, the funds at issue would not exist without the tax-supported facilities at the university and the public employees who work there. Furthermore, as a tax-supported institution of higher learning, UCA's operating budget is made up of a combination of money from the state treasury and the institution's available cash funds, and expenditures from its cash funds must be approved by the legislature. *See* Ark.Code Ann. § 19–4–801, et seq. If UCA's cash funds are rendered deficient by an illegal exaction, the deficit has to be made up. These cash funds are subject to legislative audit, as evidenced by the record in this case, and the taxpayers of Arkansas clearly have an interest in ensuring that the funds at issue are not misapplied or illegally spent. Although cash funds by definition are not directly approp-

riated by the legislature, Ark.Code Ann. 19–4–801 (Supp. 2015), the funds at issue in the present case did arise from taxation and the taxpayers of this state have standing to pursue this illegal exaction claim.

Accordingly, I would reverse the circuit court and remand this case for further proceedings.

Brill, C.J., and Baker, J., join.