ROBIN F. WYNNE, Associate Justice |, Appellant Mike Wilson filed this illegal-exaction suit in the Pulaski County Circuit Court alleging that certain acts of 2015, which appropriated funds from the Arkansas General Improvement Fund (GIF) to eight planning and development districts, are unconstitutional. The circuit court granted summary judgment in favor of the defendants. Wilson now appeals, and the defendants have cross-appealed the circuit court’s rulings in Wilson’s favor on standing and mootness. For the reasons set out below, we reverse and remand on direct appeal, and we affirm on cross-appeal. On February 12, 2016, Wilson, a resident and taxpayer of Jacksonville, Pulaski County, filed an illegal-exaction complaint under article 16, § 18 of the Arkansas Constitution. Named as defendants were Larry Walther, Director of the Arkansas I gDepartment of Finance and Administration; Andrea Lea, State Auditor; Dennis Milligan, State Treasurer; and Central Arkansas Planning and Development District, Inc. (CAPDD).[1] Wilson alleged that Act 514,[2] Act 551,[3] Act 612,[4] Act 619,[5] Act 622,[6] Act 654,[7] Act 786,[8] and Act 818[9] of 2015 violate amendment fourteen’s prohibition on special or local legislation and article 5, § 29’s requirement that an appropriation’s purpose be “distinctly stated.” The challenged acts appropriate funds from the GIF for grants to eight multi-county planning and development districts that collectively encompass the entire state. Each act contains the following language: SECTION 1. APPROPRIATION-GENERAL IMPROVEMENT PLANNING AND DEVELOPMENT GRANTS. There is hereby appropriated, to the Department of Finance and Administration—Disbursing Officer, to be payable from the General Improvement Fund or its successor fund or fund accounts, for grants to planning and development districts, the following[.] For each of the eight planning and development districts throughout the state, appropriations “in a sum not to exceed $1,000,000” were listed in Section 1 of each act, except that the sum of $8,000,000 was listed in Act 818, bringing the total amount appropriated to each district to $15 million. 13Wilson alleged that on September 13, 2015, the State defendants had disbursed to CAPDD the sum of $2,987,500 pursuant to Act 1146 of 2015[10] and that of that sum CAPDD had made grants in the amount of $440,000 as of the date of the complaint.. According to Wilson, in the 2015 General Assembly, each member of the Senate was allocated $285,000 and each member of the House was allocated $70,000 for expenditure from the GIF; this money is awarded to grant applicants by the CAPDD board of directors only with the express approval of individual legislators. Wilson further alleged that “[i]n purpose and effect, the Defendant Central Arkansas Planning and Development District, Inc. simply acts as a money-laundering machine for individual legislators for the sole purpose of evading the force of the constitutional prohibitions and decisions of the Supreme Court.” Wilson sought temporary and permanent injunctions preventing the defendants from making or approving disbursements from the GIF under the acts; declaratory judgment that the acts are unconstitutional, void, and of no effect; an order directing CAPDD to refund $2,987,500 plus interest to the state treasury; and attorney’s fees and costs. In an amended complaint, Wilson added an allegation that the defendants had violated Arkansas Code Annotated section 14-166-205 (Repl. 1998), which sets out conditions with which planning and development districts must comply to receive state funds. After the circuit court denied his motion for temporary restraining order or preliminary injunction, Wilson filed a motion for summary judgment; the State defendants filed a motion for summary judgment that included arguments that Wilson lacked standing Rand the complaint should be dismissed for mootness. CAPDD filed a motion for summary judgment in which it adopted and incorporated the State defendants’ summary-judgment motion and brief and argued that there was no private right of action against a private non-profit corporation for illegal exaction. After responses and replies were filed, the circuit court entered an order finding that Wilson had standing and that his request for declaratory and injunctive relief was not moot, and granting summary judgment in favor of the defendants on the merits. This appeal and cross-appeal followed. At the outset, we note that appellant Mike Wilson previously obtained relief in an illegal-exaction lawsuit challenging the constitutionality of various direct appropriations by the General Assembly. In Wilson v. Weiss, 368 Ark. 300, 245 S.W.3d 144 (2006) (Wilson I), this court held that a $400,000 appropriation to the City of Bige-low for “infrastructure, sewer, and streets” violated amendment fourteen’s prohibition against special or local legislation. After a final order was obtained for the remaining acts challenged, in Wilson v. Weiss, 370 Ark. 205, 258 S.W.3d 351 (2007) (Wilson II), this court held that the following appropriations were unconstitutional under article 5, § 29 (requiring that a distinct purpose be stated in an appropriations bill) and amendment fourteen (prohibiting special or local legislation): $50,000 for “state assistance” to the Cleburne County Library; $20,000 for “state aid” to the Jacksonville Museum of Military History; and $10,000 for “state assistance” to the Reed’s Bridge Preservation Society, Inc. In addition, an appropriation of $300,000 to the City of Jacksonville, Arkansas, “for costs associated with the construction, renovation, and equipping of a library,” was held to violate amendment fourteen. Wilson contends that |fithe present system was devised to allow legislators to continue to direct GIF money locally following this court’s rulings in Wilson I and Wilson II. I. Cross-Appeal[11] A. Standing On cross-appeal, the State argues that this court should affirm summary judgment to the cross-appellants because Wilson lacked standing to bring an illegal-exaction suit. Article 16, § 13 of the Arkansas Constitution provides: “Amy citizen of the county, city, or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.” An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. Brewer v. Carter, 365 Ark. 531, 534, 231 S.W.3d 707, 709 (2006). In a “public funds” illegal-exaction case such as the one before us, the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. See Bowerman v. Takeda Pharm. U.S.A., 2014 Ark. 388, at 4, 442 S.W.3d 839, 842. As a general rule, we have explained that citizens have standing to bring a “public funds” case because they have a vested interest in ensuring that the tax money they have contributed to a state or local government treasury is lawfully spent. Brewer v. Carter, 365 Ark. 531, 534, 231 S.W.3d 707, 709 (2006). This court has explained: [T]he only standing requirements we have imposed in public-funds cases is that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. Id. We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor |fihave we required the plaintiff to establish a significant tax contribution to the state treasury. Id. Hence, in public-funds cases we have given the word “interested” as used in article 16, section 13, a very broad construction. Bowerman, 2014 Ark. 388, at 5, 442 S.W.3d at 842-43 (citing Ghegan & Ghegan, Inc. v. Weiss, 338 Ark. 9, 991 S.W.2d 536 (1999)). Here, the public funds at issue were appropriated under the challenged acts, and funds were allocated in the General Improvement Distribution Act of 2015 (Act 1146 of 2015), which established the 90th Session Projects Account (the Account) within the GIF. Pursuant to Act 1146, the Account is composed of the following: uno-bligated and unallocated money remaining in the GIF; general revenue funds remaining in the General Revenue Allotment Reserve Fund; interest earned on State Treasury fund balances; special revenues credited to the GIF from estate taxes as set out in Arkansas Code Annotated section 19-6-301(171) (Repl. 2016); any available balance remaining in the 89th Session Projects Account of the GIF; and any funds provided by the Arkansas Attorney General that were received by the State from settlement agreements or as designated by court order. The State argues that Wilson lacks standing because the only tax dollars contained in the Account are estate taxes, which Wilson had not paid. The State’s focus on the word “tax” in Act 1146 is misplaced. The money in the GIF include general revenue funds, which consist of tax money, including sales and use taxes, individual income taxes, and cigarette taxes. See Ark. Code Ann. § 19—6— 201 (general revenues). The fact that some of these are “carryover” funds does not detract from the fact that they were originally tax dollars. McCafferty v. Oxford Am. Literary Project, Inc., 2016 Ark. 75, 484 S.W.3d 662, is inapposite because the university’s cash funds at issue in that case were not generated or arising from taxation but ^instead were derived from campus operations (housing, bookstore, food-services, etc.). This court has consistently required that the funds at issue in a public-funds illegal-exaction case come from taxes or implicate the state or local treasury. See McCafferty, 2016 Ark. 75, at 5, 484 S.W.3d at 665 (citing cases). We are satisfied that the funds at issue in this case are derived from taxes and implicate the state treasury such that Wilson, as a taxpayer, has standing. We affirm the circuit court’s ruling that Wilson has taxpayer standing in this illegal-exaction suit. B. Mootness Next, the State argues that dismissal of the complaint should be affirmed for mootness. As a general rule, appellate courts of this state will not review issues that are moot. Honeycutt v. Foster, 371 Ark. 545, 548, 268 S.W.3d 875, 878 (2007). A case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. Shipp v. Franklin, 370 Ark. 262, 267, 258 S.W.3d 744, 748 (2007). Here, the parties agree that the funds were disbursed to CAPDD in September 2015, and the State contends that Wilson’s illegal-exaction complaint was moot for lack of a remedy when it was filed in February 2016. According to the State, injunctive relief was never a proper remedy against the State and restitution against CAPDD was never a proper remedy because CAPDD acted in good-faith reliance upon laws presumed to be constitutional. The State contends that this case is “just like” White v. Arkansas Capital Corp./Diamond State Ventures, 365 Ark. 200, 226 S.W.3d 825 (2006), in which this court affirmed the trial court’s dismissal of a taxpayer illegal-exaction complaint as moot. In White, several defendant-appellees had | sbeen awarded grants from the Economic Development of Arkansas Fund Commission in 1998 and 1999, the complaint challenging the constitutionality of the fund had been filed in 1999, and by the time the merits of the case were reached in 2004 the funds contained in the grants had already been spent and were no longer maintained by the recipients. This court held that restitution was not a proper remedy for state officials or private citizens who relied in good faith on statutes, which are presumed to be constitutional. The present case is distinguishable, because the entity receiving the state funds in this case kept an accounting of the funds received from the GIF and the parties agreed that $2,547,804 was still in CAPDD’s account at the end of January 2016. We discern a significant difference between a private entity receiving a grant from the State and, having utilized the grant money, being ordered to pay restitution, and a planning and development district being granted state funds and ordered to repay funds still in its possession. Wilson does not seek repayment from persons or entities that received grants from CAPDD. We are convinced that Wilson’s appeal is not moot because the cross-appellants have not shown that all of the funds at issue have been expended by CAPDD, and taxpayers would be entitled to repayment of GIF funds still in CAPDD’s possession if the challenged acts are declared unconstitutional. Furthermore, even if the case were considered moot as to the State defendants because the funds appropriated in the challenged acts have been dispersed to CAPDD, we would still address the issues presented under an exception to the mootness doctrine. This court has recognized two exceptions to the mootness doctrine, one of which concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. Honeycutt v. Foster, 371 Ark. at 548, 268 S.W.3d at 878. The issues before [aus involve significant statewide public interest because they concern millions of dollars of taxpayer money. A decision on the constitutionality of these appropriations might avert future litigation, and we will address those issues raised on direct appeal. II. Direct Appeal On direct appeal, Wilson argues that the circuit court erred in granting summary judgment to the State because the challenged acts violate both article 5, § 29 and amendment fourteen to the Arkansas Constitution. When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. Washington Cty. v. Bd. of Trustees of the Univ. of Ark., 2016 Ark. 34, at 3, 480 S.W.3d 173, 175 (quoting State v. Cassell, 2013 Ark. 221, at 4-5, 427 S.W.3d 663, 666). This court reviews a circuit court’s interpretation of the constitution de novo because it is for this court to determine what a constitutional provision means. Martin v. Kohls, 2014 Ark. 427, at 10-11, 444 S.W.3d 844, 850. Acts of the legislature are presumed constitutional and the party challenging the statute has the burden to prove otherwise. Id. An act will be struck down only when there is a clear incompatibility between the act and the constitution. Id. Section 29 of article 5 of the Arkansas Constitution provides as follows: “No money shall be drawn from the treasury except in pursuance of specific appropriations made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years.” (Emphasis added.) Wilson contends that the stated purpose of the Imchallenged acts—“grants”—fails to distinctly state how the monies will be spent, which violates article 5, § 29. In Wilson II, the stated purpose in each act was either to provide “state assistance” or “state aid,” and this court wrote: We agree with Wilson that these stated purposes do not comply with the requirement of Article 5, Section 29, and this court’s precedent. Our reason is simple—the mere statement that the challenged acts will be used for “state assistance” or “state aid” does not explain “how” the funds will be used. Wilson v. Weiss, 370 Ark. 205, 213, 258 S.W.3d 351, 356. In that case, this court rejected arguments that a distinct purpose could be found in DFA Emergency Rule 2005-3, the boilerplate language in an emergency clause, or in the circuit court’s findings. See also Ark Game & Fish Comm’n v. Page, 192 Ark. 732, 736, 94 S.W.2d 107, 109 (1936) (holding that “[t]he public policy of the state is defined by its Constitution, and because of the fact that the Constitution says that the purpose of the appropriation shall be distinctly stated in the bill, we cannot permit even honesty, integrity, good intentions, progressive enthusiasm, or even successful operation to take the place of an essential or material part of the appropriation bill.”). The reasoning of Wilson II applies in the present case. A “grant” to CAPDD is inadequate under article 5, § 29, just as an appropriation of “state assistance” or “state aid” was held to be unconstitutional in Wilson II. The State argues that the purpose of the appropriations can be found in external statutes—here, Arkansas Code Annotated section 14-166-201 et seq.— where it is clear that the statutes are applicable. The State contends that in light of the statutory and regulatory mechanisms expressly governing the disbursement of funds to planning and development districts (Ark. Code Ann. §§ 14-166-|n201 et seq. and DFA Rule 2005-3), the only reasonable interpretation of the “distinct purpose” of the challenged acts is to promote economic development for the benefit of the citizens of Arkansas. However, the plain language of article 5, § 29 requires the purpose of the appropriation to be distinctly stated in the bill itself. Accordingly, we reverse and remand on this point without reaching Wilson’s factual allegations because the acts are facially unconstitutional. Because we reverse under article 5, § 29, it is unnecessary to address Wilson’s arguments regarding amendment fourteen (special or local legislation). See Ark. Dep’t of Hum. Servs. v. Cole, 2011 Ark. 145, 380 S.W.3d 429. Reversed and remanded on direct appeal; affirmed on cross-appeal. Wood and Womack, JJ., concur in part and dissent in part. . CAPDD is an Arkansas non-profit corporation. The challenged acts appropriate funds to the "Central Arkansas Economic Development District, Inc.,” an entity that apparently no longer exists. . Act of March 16, 2015, No. 514, 2015 Ark. Acts 2170, . Act of March 18, 2015, No. 551, 2015 Ark. Acts 2261. . Act of March 24, 2015, No. 612, 2015 Ark. Acts 2494. . Act of March 24, 2015, No. 619, 2015 Ark. Acts 2513. . Act of March 24, 2015, No. 622, 2015 Ark. Acts 2521. The complaint incorrectly lists Act 626 rather than Act 622. . Act of March 24, 2015, No. 654, 2015 Ark. Acts 2601. . Act of March 29, 2015, No. 786, 2015 Ark. Acts 3034. . Act of March 29, 2015, No. 818, 2015 Ark. Acts 3110. . Act 1146 of 2015 established the 90th Session Projects Account within the General Improvement Fund and provided financing from that account for "the various projects and purposes enumerated,” including financing for the planning and development districts. . CAPDD, which is a separate cross-appellant, filed a brief in which it addresses factual matters raised in Wilson’s brief but otherwise joins in the State’s arguments.